# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 23-CV-00239 (RER) (MMH)
_____

FAIGY OESTREICHER

VERSUS

EQUIFAX INFORMATION SERVICES, LLC; FLAGSTAR BANK; EXPERIAN INFORMATION SOLUTIONS, INC. AND TRANSUNION, LLC

_____

**MEMORANDUM & ORDER**

March 20, 2024

_____

**RAMON E. REYES, JR., U.S.D.J.:**

Plaintiff Faigy Oestreicher ("Plaintiff") brings this consumer credit reporting action against Defendants Equifax Information Services, LLC; Flagstar Bank; Experian Information Solutions, Inc. ("EIS"); and TransUnion, LLC (collectively, "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (*See generally* ECF No. 1-1 ("Compl.")). Before the Court is EIS's Motion to Compel Arbitration. (ECF No. 34 ("Mot.")). After carefully reviewing the record, and for the reasons set forth herein, the Motion to Compel Arbitration is granted, and the claims against EIS are stayed pending arbitration.

## BACKGROUND

I.  Plaintiff's FCRA Claims

The factual background and procedural history of this case are informed in part by the June 5, 2023 order granting EIS's request for a stay of discovery. *Oestreicher v.*

*Equifax Info. Servs., LLC*, No. 23-CV-239 (NRM) (MMH), 2023 WL 3819378, at *1 (E.D.N.Y. June 5, 2023); (ECF No. 40 ("Order")). Plaintiff alleges EIS violated the FCRA. (Compl. at ¶¶ 1, 38 – 44). EIS is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and, as such, issues consumer reports as defined by 15 U.S.C. § 1681a(d). (Compl. ¶¶ 7, 39; ECF No. 19 ("Answer") ¶ 7, 39).

II.      Enrollment in CreditWorks and Arbitration Agreement

Plaintiff signed up for services from CreditWorks in January 2023. (ECF No. 35 ("Opp.") at 4-5, 8; Mot. at 3-4; Reply at 1). CreditWorks provides credit monitoring services with EIS's affiliate, ConsumerInvo.com, Inc., which does business as Experian Consumer Services. (Mot. at 2). CreditWorks' customers must complete two webforms to enroll, a "First Webform" and "Second Webform," each of which contain a "Submit and Continue" button. (Mot. at 3-4; ECF No. 36 ("Williams Decl.") ¶ 3; ECF No. 36-1 ("First Webform"); ECF No. 36-2 ("Second Webform"); ECF No. 36-3). The First Webform prompts personal information. (Williams Decl. ¶ 3; First Webform at 2). The Second Webform creates a username, password, and PIN, and discloses that by clicking "Submit and Continue," the customer "accept[s] and agree[s] to [the] Terms of Use Agreement" ("TOU"). (Second Webform at 2; Williams Decl. at ¶ 3).

The TOU are linked in clear, bold, blue text within this disclosure on the Second Webform. (Williams Decl. at ¶ 4; Second Webform at 2). In the TOU, under a large, bold header that reads "DISPUTE RESOLUTION BY BINDING ARBITRATION," appears an arbitration clause, summarized in the first paragraph as follows: "WE EACH AGREE TO RESOLVE THOSE DISPUTES THROUGH BINDING ARBITRATION . . . INSTEAD OF IN COURTS OF GENERAL JURISDICTION TO THE FULLEST EXTENT PERMITTED

BY LAW." (ECF No. 36-3, Terms of Use Agreement ("TOU") at 8). The clause continues,

in relevant part:

> [T]he agreement to arbitrate includes, but is not limited to: claims arising out of or relating to *any aspect of the relationship between us* arising out of any Service or Website, whether based in contract, tort, [or] *statute* . . . [;] claims that *arose before this or any prior Agreement* . . . [and] claims that are currently the subject of purported class action litigation[.]

(TOU at 8-9 (emphasis added)). In the next paragraph, the arbitration clause defines who

it applies to:

> For purposes of this arbitration provision, *references to "ECS," "you," and "us" shall include* our respective parent entities, subsidiaries, *affiliates* (including, without limitation, our service providers), agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries of Services and/or Websites or information under this or prior Agreements between us relating to Services and/or Websites.

(TOU at 9 (emphasis added)). The term "ECS" used in the broader TOU refers to

"Experian Consumer Services." (*Id.* at 2). The TOU continues:

> For the purposes of this agreement the terms "we," "us" or "ECS" refer to ConsumerInfo.com, Inc., an Experian® company (also known as Experian Consumer Services) and *referred to as "Experian"* on the Websites, its predecessors in interest, successors and assigns, *affiliates, agents, employees, and any of its third party service providers* (including, without limitation, cloud service providers) who ECS uses in connection with the provision of the Services to you.

(*Id.* at 2 (emphasis added)). In whole, the TOU mentions the word "Experian" in one form

or another at least 240 times throughout, the first of which occurs in bold on the first page:

> "OVERVIEW AND ACCEPTANCE OF TERMS You agree that by. . . accessing or using our . . . website(s) (such as this website, usa.experian.com, or any affiliated website

> (including, but not limited to, **Experian.com . . . usa.experian.com, and experian.experiandirect.com**)), or mobile applications (such as the Experian app) . . . agree to be bound by this [TOU.]"

(*Id.* at 2 (emphasis in original)). Further down, closer to the arbitration clause, the TOU also contains a delegation clause referring certain issues to an arbitrator:

> All issues are for the arbitrator to decide, including the *scope* and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator *shall have exclusive authority to resolve any such dispute relating to the scope* and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

(*Id.* at 9-10 (emphasis added)).

III.   <u>EIS Moves to Compel Arbitration</u>

On February 23, 2023, EIS answered the Complaint with twelve defenses, including that Plaintiff is bound by an arbitration agreement, and requested leave to file a motion to compel arbitration. (*See* Answer; ECF No. 18; ECF No. 24). EIS moved to stay discovery pending this motion, which was granted over Plaintiff's opposition. (*See* ECF No. 31; ECF No. 32; Order). On May 8, 2023, EIS filed the present motion, alongside a declaration that attached as exhibits the TOU, First Webform, and Second Webform. (Mot.; Williams Decl.; First Webform; Second Webform; TOU). Plaintiff opposed the motion (ECF No. 35 ("Opp.")), and EIS replied. (ECF No. 73 ("Reply")).

**DISCUSSION**

I.      Legal Standard

        A.  Procedural Framework Under the FAA

        Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements" and places them on "the same footing as other contracts." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (quoting first *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), then quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). Courts deciding motions to compel arbitration apply a "standard similar to that applicable for a motion for summary judgment." *Meyer*, 868 F.3d at 74. "Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel*, 697 F.3d at 113; *Meyer*, 868 F.3d at 74. In doing so, the court considers "all relevant, admissible evidence submitted by the parties . . . and draws all reasonable inferences in favor of the non-moving party." *Meyer*, 868 F.3d at 74 (citations omitted).

        Deciding a motion to compel arbitration involves a four-step inquiry. *See Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340 (JFB) (ARL), 2018 WL 1225539, at *2 (E.D.N.Y. Mar. 9, 2018) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)). First, a court must determine "whether the parties agreed to arbitrate," and second, "whether the scope of that agreement encompasses the claims at issue." *Greene v. Kabbalah Ctr. Int'l, Inc.*, 625 F. Supp. 3d 3, 14 (E.D.N.Y. 2022) (quoting *Holick v. Cellular*

*Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015)); *accord Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 116 (2d Cir. 2023). Third, "if federal statutory claims are asserted, [the Court] must consider whether Congress intended those claims to be nonarbitrable; and fourth . . . whether to stay the balance of the proceedings pending arbitration." *Guyden*, 544 F.3d at 382; *see also Biggs*, 2018 WL 125539 at *2.

The party moving to compel bears the burden of proof that a valid agreement exists. *See Cimillo v. Experian Info. Sols., Inc.*, No. 21 Civ. 9132 (VB) (PEG), 2023 WL 2473403, at *4 (S.D.N.Y. Mar. 13, 2023) (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order)). EIS seeks an order compelling Plaintiff to submit her claims to arbitration in accordance with the TOU's arbitration agreement. (Mot.). In other words, EIS seeks Plaintiff's specific performance of the agreement upon a finding that "the making of the agreement for arbitration or the failure to comply therewith is not in issue." *See* 9 U.S.C. § 4. (Mot.). "Specific performance is an equitable remedy, committed to the district court's sound discretion." *United States v. Bedford Assocs.*, 657 F.2d 1300, 1314 (2d Cir. 1981). As such, a court may decline to enforce a contract for specific performance if it is unconscionable, regardless of whether the parties have pleaded unconscionability. *See* 12 Corbin on Contracts § 64.3 (2024) (citing *Wagner v. Estate of Rummel*, 391 Pa. Super. 555, 571 A.2d 1055 (1990) (the unconscionability of the contract, although not pleaded, defeated claims for specific performance); *see also Salgado v. Carrows Rests. Inc*, 33 Cal. App. 5th 356, 362 (2019), *as modified* (Mar. 25, 2019) ("Courts may refuse to enforce unconscionable contracts and this doctrine applies to arbitration agreements.")

B.  Choice of Law

As the Supreme Court explained, arbitration agreements are matters of contracts, and the general principles of contract formation apply. *See, e.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 228 (2013); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). The choice-of-law doctrine of the forum determines which state contract law applies to issues of contract formation and enforcement. *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 46-47 (E.D.N.Y. 2017); *see also Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir.1984) ("In deciding a question of state law, the federal court must apply the forum state's choice-of-law rules to determine which state's law governs.").

Here, New York law applies because New York "has the most significant contacts with the matter in dispute." *Kai Peng*, 237 F. Supp. 3d at 46-47 (quoting *Feiger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001)); *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 26 (E.D.N.Y. 2023). The parties' moving papers cite to some New York law and the TOU is silent on choice of law. (Mot. at 8, 15-16; Opp. at 7; Reply at 4). Plaintiff resides in Brooklyn, New York, and though EIS's principal place of business is in California, it regularly conducts business in New York. (Compl. at ¶¶ 6-7; Answer at ¶ 7). New York law therefore applies to issues of contract formation and enforcement. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

II.     The Parties Have a Valid Agreement to Arbitrate

The initial question before the Court is whether there is a valid agreement to arbitrate. *Holick*, 802 F.3d at 394; *Henry Schein*, 139 S. Ct. at 527, 529. Plaintiff does not directly contest the validity of the agreement to arbitrate or argue that enforcing it would

be unconscionable. (Opp.). Instead, Plaintiff makes three arguments against enforcement of the agreement: first, the dispute is outside the *scope* of the agreement to arbitrate *because it was signed mid-litigation*; second, the dispute is outside the *scope* of the agreement to arbitrate *because EIS is not a party to the agreement*; and third, that granting the motion to compel arbitration contradicts the public policy for judicial efficiency. (Opp.).

While Plaintiff does not outright claim the agreement is invalid, Plaintiff's arguments on the issue of scope of the agreement highlight two facts that could be construed as contesting whether a valid agreement was formed. (Mot. at 1-4; Opp. at 1, 8; Reply at 1). The parties do not dispute that (1) Plaintiff agreed to the TOU when Plaintiff signed up for CreditWorks months after filing suit against EIS, and (2) CreditWorks is technically a separate entity from EIS. (*Id.*). The Court must find a valid, enforceable agreement to arbitrate before granting EIS's motion. *Holick*, 802 F.3d at 394; *Henry Schein*, 139 S. Ct. 524 at 527, 529. The exact or similar TOU at issue here has been found valid at least twelve times in cases involving EIS,[1] but in only one of those cases

---

[1] *See Stephens v. Experian Info. Sols., Inc.*, 614 F. Supp. 3d 735, 746 (D. Haw. 2022) ("The failure to show that the agreement unreasonably favored CI/ECS forecloses her argument that it was unconscionable."); *Alvarez*, 662 F. Supp. 3d at 27; *Liu v. Equifax Info. Services, LLC et al*, No. 22-CV-10638 (ADB), 2024 WL 308089, at *7 (D. Mass. Jan. 26, 2024) (finding arbitration agreement valid but denying motion to compel on the grounds of waiver); *Chong v. Bank of Am., N.A.*, No. CV 22-00151 JMS-KJM, 2022 WL 16832742, at *2 (D. Haw. Nov. 8, 2022); *Cimillo*, 2023 WL 2473403, at *6-*7; *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021); *Johnson v. Sw. Recovery Servs. Inc.*, No. 3:22-CV-242-X-BH, 2023 WL 1944127, at *12 (N.D. Tex. Jan. 24, 2023), *report and recommendation adopted*, No. 3:22-CV-0242-X-BH, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023); *Roberson v. Experian Info. Sols., Inc.*, No. SA-21-CV-00316-JKP, 2022 WL 62270, at *4 (W.D. Tex. Jan. 5, 2022); *Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634, at *2 (9th Cir. Dec. 27, 2022) (summary order), at *2; *Morgan v. Experian Info. Sols., Inc.*, No. C21-5783-JCC, 2022 WL 681359, at *1 (W.D. Wash. Mar. 4, 2022); *Sauer v. Experian Info. Sols., Inc.*, No. 821-CV-00963 (JLS)

was the TOU agreed to after litigation had commenced. *Alvarez*, 661 F. Supp. 3d at 22 (suit was filed on June 5, 2019 and CreditWorks terms were agreed to on July 10, 2019). Here, Plaintiff filed suit on October 21, 2022, and signed up for CreditWorks in January 2023. As such, the Court considers whether the timing of the arbitration agreement or the identity of the parties prevent a finding of a valid agreement. Put differently, (1) is EIS bound by the CreditWorks agreement as an affiliate; and (2) is that agreement enforceable despite it being formed months into litigation? As set out further below, the answer to both questions is "yes." EIS has met the required showing of a valid agreement to arbitrate. That agreement should be enforced because there is no genuine dispute of fact that could render it unenforceable as a matter of law. *See Biggs*, 2018 WL 1225539, at *9; *Meyer*, 868 F.3d at 74 (2d Cir. 2017).

A.  <u>Contract Formation</u>

The arbitration agreement is a validly formed contract. The basic elements of contract formation apply to arbitration agreements. *Kai Peng*, 237 F. Supp. 3d at 47. The use of an online form to create a contract "does not fundamentally change[]" the analysis; a party may accept the offer of terms presented on a screen simply by clicking to indicate assent. *Id.* at 47-50 (citing first *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403-27 (2d Cir. 2004); then citing *Bassett v. Electr. Arts, Inc.*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015)). "[O]n a motion to compel arbitration, we may determine that an agreement to arbitrate

_____

(DFM), 2022 WL 2163016, at *2 (C.D. Cal. May 12, 2022); *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016, 1019 (C.D. Cal. 2022).

exists where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer*, 868 F.3d at 74-76 (applying California law, which has "substantially similar rules for determining whether the parties have mutually assented to a contract term" as New York). Here, there is no dispute that the Webforms clearly identified the TOU and required Plaintiff to affirmatively assent to the terms therein, thereby forming an agreement. *Alvarez*, 661 F. Supp. 3d at 25-27; *Meeks*, 2022 WL 17958634, at *2. Indeed, Plaintiff "agreed to [EIS]'s TOU when registering for CreditWorks online." *Alvarez*, 661 F. Supp. 3d at 25.

The fact that EIS is not a signatory to the TOU does not negate the existence of a valid agreement to arbitrate. Plaintiff argues she did not enroll in CreditWorks with EIS and therefore did not form an agreement to arbitrate with EIS because they were not a signatory to the TOU. (Opp. at 1-2). EIS need not be a signatory to the agreement, however; EIS and Plaintiff are bound by the agreement so long as EIS was a party that was properly disclosed at the time of assent. *See Ragone*, 595 F.3d at 127; *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997); *Meeks*, 2022 WL 17958634, at *2 (holding EIS was a party to an arbitration agreement despite not being a signatory). As was the case in *Alvarez* and *Meeks*, the TOU clearly "defines ECS to include 'affiliates,' which [EIS] was at the time Plaintiff entered into it and still is, and [EIS] is repeatedly referenced throughout the larger TOU." *Alvarez*, 661 F. Supp. 3d at 25-27; *Meeks*, 2022 WL 17958634, at *2. (Mot. at 5-6; Reply at 1). The word "Experian" appears over 240 times in the TOU, making clear that EIS "play[s] a role in the TOU itself, which sufficiently evince[s EIS]'s assent to be bound by the agreement." *Compare Alvarez*, 661 F. Supp. 3d 18, 26 (E.D.N.Y. 2023) (the mention of "Experian" in the CreditWorks agreement put

plaintiff on notice of making the agreement to arbitrate with defendant and its affiliates), *with White v. Sunoco, Inc.*, 870 F.3d 257, 260 (3d Cir. 2017) ("The Card Agreement does not mention the word 'Sunoco,'" and so the terms at issue did not properly bind Sunoco to the agreement). Because EIS is an affiliate as defined in the TOU, and thus bound by the agreement with Plaintiff, the Court need not consider EIS's arguments that it is entitled to enforcement under an alternative theory as a third-party beneficiary.[2] Therefore, the parties mutually assented to the agreement to arbitrate.

The timing of the arbitration agreement mid-litigation does not negate a valid contract. Plaintiff argues it is "impossible" that she agreed to arbitrate her FCRA claims because they were filed prior to her enrollment in CreditWorks. (Opp. at 1, 4-6). "[T]he contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs contrary to contract principles which govern arbitration agreements." *Salgado*, 33 Cal. App. 5th at 361 (2019) (quoting *Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993)). Contracts can indeed be formed mid-suit; the rights to pursue a case are routinely waived after disputes arise and after suits are filed. *Collick v. United States*, 552 F. Supp. 2d 349, 352 (E.D.N.Y. 2008); *Ficel Transp., Inc. v. State*, 177 N.Y.S.3d 356, 359 (N.Y. App. Div. 2022). When parties settle a case, for example, that waiver is often made in exchange for the

---

[2] *See Mobile Real Est., LLC v. NewPoint Media Grp.*, LLC, 460 F. Supp. 3d 457, 479 (S.D.N.Y. 2020) (collecting cases) ("the Second Circuit has determined that third parties may be bound by arbitration agreements to which they are not a signatory.") This rule prevents a third party from obtaining a conflicting outcome in court by avoiding arbitration. *See WorldCrisa Corp.*, 129 F.3d at 76 (quoting *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir.1996)).

benefit of a certain, negotiated resolution rather than the unpredictable throes of dispositive motions or trial. *Id.* Other parties to this case have done just that. (ECF Nos. 58, 75). In agreeing to the TOU, both parties waived the right to pursue litigation in this forum in exchange for the services of EIS's CreditWorks. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (explaining the mutual agreement to submit to arbitration is valid consideration, as required for contract formation). In general, an arbitration clause may encompass the waiver of litigating prior disputes absent a specific limitation to future claims. *Holick*, 802 F.3d at 397-98 (citing *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.1972)). Here, the TOU goes so far as to explicitly call for the arbitration of "prior" disputes, putting Plaintiff on notice as to what she was giving up when she agreed to it. *See Alvarez*, 661 F. Supp. 3d at 20, 26-27; *c.f. Holick* 802 F.3d 391, 397-98 (Finding that "[i]t would be inconsistent with the parties' conduct to construe the [agreement] to apply to a period when the parties themselves did not contemplate such a relationship.") As such, the waiver of litigating all disputes (even prior disputes) is valid consideration, and the parties formed a valid agreement to arbitrate.

### B.  Contract Enforcement

Plaintiff points to the mid-litigation timing of the agreement being signed after this litigation commenced as necessarily placing this dispute outside the scope of the agreement. (Opp. at 1, 5-6) Plaintiff does not go so far as to say that the contract is unenforceable as unconscionable, but rather suggests that its application here would be unfair or "impossible." (*Id.*). Courts applying other states' contract laws have found that arbitration agreements are unconscionable and void if formed after the onset of litigation. *See, e.g., Wilcox v. Valero Ref. Co.*, 256 F. Supp. 2d 687, 691 (S.D. Tex. 2003) (applying

Texas law to find a clause unconscionable because defendant employer "implement[ed] a dispute resolution program, which contains binding arbitration, once a plaintiff ha[d] already initiated a lawsuit against a defendant."); *Salgado*, 33 Cal.App.5th at 361-63 (applying California law to find that while an arbitration agreement signed after litigation has commenced may compel arbitration of the dispute in some circumstances, further proceedings were required to determine whether the agreement to arbitrate was unconscionable due to assertions that defendants forced plaintiff to sign the agreement without consulting her attorney in the litigation). Courts in this Circuit and in New York also have found arbitration agreements signed mid-litigation to be unconscionable. *Weinstein v. Jenny Craig Ops, Inc.*, No. 105520/11, 2014 WL 10680367, at *2 (N.Y. Sup. Ct. Sep. 08, 2014) ("Arbitration agreements signed after litigation is commenced are deemed unconscionable and thus unenforceable") (citing *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005)); *OConner v. Agilent Sols., Inc.*, 444 F. Supp. 3d 593, 606 (S.D.N.Y. 2020). As explained further below, however, the arbitration agreement here is not unconscionable, despite when it was made.

To make a successful unconscionability defense to contract in New York, a party must show both procedural and substantive unconscionability. *See Chen-Oster v. Goldman, Sachs & Co.,* 449 F. Supp. 3d 216, 249-50 (S.D.N.Y. 2020) (applying New York law to find an arbitration clause agreed to six years after the commencement of litigation to be "tainted by procedural unconscionability" due to a lack of clarity in the changing of terms but enforcing the agreement as it lacked substantive unconsciously). "Courts consider procedural and substantive unconscionability on a 'sliding scale,' meaning that 'the more questionable the meaningfulness of choice, the less imbalance in a contract's

terms should be tolerated and vice versa.'" *De Jesus v. Gregory's Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB) (TAM), 2021 WL 5591026, at *7 (E.D.N.Y. Nov. 29, 2021) (*quoting Simar Holding Corp. v. GSC*, 928 N.Y.S.2d 592, 595 (2011)). Procedural unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice." *Gillman v. Chase Manhattan Bank, N.A*., 73 N.Y.2d 1, 9, 534 N.E.2d 824, 827 (1988).

At first blush, there is a tint of procedural unfairness because the arbitration agreement was signed mid-litigation. *See, e.g., OConner*, 444 F. Supp. 3d at 603. Courts finding procedural unconscionability were presented with facts distinguishable from those available to us here, though. Plaintiff does not allege that the TOU or arbitration clause were drafted and placed before her *because of* the litigation at hand, that she was unable to consult an attorney before making the choice to agree to the terms, that she was approached personally by the attorneys taking part in this litigation for the purpose of signing an arbitration agreement, or that she had no way of knowing she was a party that could benefit from this litigation. *See Weinstein*, 2014 WL 10680367, at *2 ("Clearly, defendant's endeavor to have its employees sign arbitration agreements was prompted by plaintiffs' commencement of this action. Arbitration agreements signed after litigation is commenced are deemed unconscionable and thus unenforceable."); *Salgado*, 33 Cal.App.5th 356, 362-63; *see also Chen-Oster*, 449 F. Supp. 3d at 248. Plaintiff points to nothing in particular about her enrollment in CreditWorks that would suggest she lacked the meaningful choice to contract. *Lawrence v. NYC Med. Prac., P.C.*, No. 18 Civ. 8649 (GHW) (KHP), 2023 WL 4706126, at *10 (S.D.N.Y. July 21, 2023) ("the majority rule is that arbitration agreements may be unconscionable where a defendant not only

implements a new arbitration policy shortly after filing of the litigation, *but also purposefully targets* putative class members with that policy") (citations omitted) (emphasis added); *OConner*, 444 F. Supp. 3d at 606 ("The Court's holding is narrow . . . [and] limited to putative members of this FLSA collective action," in part because such members lacked the knowledge defense counsel had). The sequencing of when the TOU was signed in relation with the filing of this lawsuit is not enough to make it procedurally unconscionable where the TOU agreement was conspicuously presented. "Indeed, courts often decline to find procedural unconscionability in situations where the form contract has a clear statement of the arbitration agreement and its scope." *Chen-Oster*, 449 F. Supp. 3d at 249 (collecting cases).

For the sake of argument, were the TOU or the arbitration clause procedurally unconscionable, New York law still requires an examination of the terms themselves for substantive unconscionability. *See Hegazy v. Halal Guys, Inc.*, No. 22 Civ. 01880 (JHR) (KHP), 2023 WL 8924092, at *6 (S.D.N.Y. Dec. 27, 2023) (applying New York law); *c.f. Wilcox*, 256 F. Supp. 2d at 690 (applying Texas law to find an arbitration agreement unenforceable because it was procedurally unconscionable). Substantive unconscionability "looks to the content of the contract" and "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Chen-Oster*, 449 F. Supp. 3d at 250 (quoting first *Nayal v. HIP Network Servs.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009), then quoting *Gillman*, 73 N.Y.2d 1 at 12). A contract may be "so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to

be unenforceable according to its literal terms." *Chen-Oster*, 449 F. Supp. 3d at 250 (quoting *Ragone*, 595 F.3d at 121-22).

That is clearly not the case here. *See Hegazy*, 2023 WL 8924092, at *7 (arbitration clause terms are not substantively unconscionable unless they "preclude [parties] from pursuing their rights in the arbitral forum"). The terms of this agreement apply to both parties and are not one-sided as all parties are bound by the obligations set forth therein. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 150 (2d Cir. 2004); *see also Reid v. Supershuttle Int'l, Inc.*, No. 08-CV-4854 (JG) (VVP), 2010 WL 1049613, at *4 (E.D.N.Y. Mar. 22, 2010). (TOU at 1, 9). EIS will also reimburse Plaintiff for her arbitration filing fee and each party can seek their costs as they would in court, showing that arbitration would not present a financial burden that would "preclude [Plaintiff] from pursuing [her] rights in the arbitral forum." *Kai Peng*, 237 F. Supp. 3d at 58; *Reid*, 2010 WL 1049613, at *4; *Hegazy*, 2023 WL 8924092, at *7. (*See* TOU at 8-9). The very same or similar arbitration agreement has been found valid and enforceable at least twelve times, some of which overcame unconscionability defenses.[3] Moreover, "the timing of the . . . arbitration clause does not demonstrate substantive unconscionability." *Chen-Oster*, 449 F. Supp. 3d at 251. In sum, "because there is at most procedural but not substantive unconscionability, the arbitration clauses are not unenforceable as unconscionable." *Id.* at 252.

---

[3] *See supra* n. 1.

Therefore, applying New York law, the Court finds no "genuine issue of material fact" on the issue of agreement. *Schnabel*, 697 F.3d at 113; *Meyer*, 868 F.3d at 74. EIS and Plaintiff formed a valid, enforceable agreement to arbitrate.

III.      Delegation of Scope of the Arbitration Clause to Arbitrator

Turning to the second question, whether the underlying dispute is within the scope of the arbitration agreement, federal substantive law governs. *Alvarez*, 661 F. Supp. 3d at 27 (citing *Progressive Cas. Ins. Co. v. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993)). Issues of arbitrability, including the scope of the arbitration agreement, are typically for a court to decide unless the parties clearly contract otherwise. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-52 (1986). Where parties bound by a valid arbitration agreement have unambiguously delegated the issue of arbitrability to the arbitrator, any further analyses of the scope of the arbitration agreement are outside the realm of this Court's jurisdiction. *See Henry Schein*, 139 S. Ct. at 529 (the "court possesses no power to decide the arbitrability issue" where the parties have properly delegated it); *see also Alvarez*, 661 F. Supp. 3d at 28.

Ultimately, here, the parties delegated the issue of scope to the arbitrator. *Alvarez*, 661 F. Supp. 3d at 28. (TOU at 9-10; Mot. at 2, 5). In exchange for the services described in the TOU, both parties agree to delegate issues of scope to an arbitrator. (TOU at 9-10). The delegation clause itself is a valid contract that Plaintiff has not directly challenged. *See Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 602-04 (S.D.N.Y. 2020) (absent a specific challenge to the delegation clause itself, challenges to scope must be arbitrated in accordance with a delegation clause) (*citing Rent-A-Center*, 561 U.S. at 66); *see also Coulter*, 2021 WL 735726, at *5 ("Because the Delegation Clause is

valid and uncontested, this Court's inquiry is limited to the issue of whether a valid arbitration agreement exists"). (TOU at 9-10). Further, because the delegation clause clearly covers all issues of scope, the Court cannot, and will not, delve into whether the FCRA dispute is outside the scope of the arbitration agreement. *See Alvarez*, 661 F. Supp. 3d at 28 (collecting cases) ("Numerous courts have come to the same conclusion when dealing with identical language and have declined to reach the question of arbitrability").[4] Only an arbitrator can say whether Plaintiff's arguments regarding the scope of the agreement have any legs. *Compare Alvarez*, 661 F. Supp. 3d at 28 (having found a valid delegation clause, "notwithstanding Plaintiff's protests that his dispute is not encompassed by the Arbitration Agreement, the Court's inquiry can go no further"), *and Cimillo*, 2023 WL 2473403 at *8 (same), *with DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 320-23 (2d Cir. 2021) (where the text of the clause itself unmistakably limited its delegation of some issues of scope, the court limited the threshold questions sent to arbitration and retained jurisdiction over some issues of scope).

Plaintiff expresses concern about the case boomeranging back to federal court after an arbitrator hypothetically finds this dispute is outside the scope of the TOU, causing expense and inefficiency contrary to public policy. (Opp. at 6-7). The delegation of the issue of scope, however, is consistent with the policy concerns of efficient dispute

---

[4] The "presumption of arbitrability" EIS argues for does not potentially come into play until scope of an arbitration agreement is addressed. *See Niagara Mohawk Power Corp.*, 67 F.4th 107, 116 (2d Cir. 2023) (citing *Granite Rock v. Int'l Broth. of Teamsters*, 561 U.S. 287, 300-01 (2010)) (explaining *Granite Rock*'s clarification that abrogated some of the Second Circuit cases both parties rely on in their moving papers). Because there is a valid delegation clause, there is no need to apply the presumption here.

resolution that prompted the FAA's passage. *See Byrd*, 470 U.S. at 221 ("The preeminent concern of Congress in passing the [FAA] was to enforce private agreements . . . that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation"); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) ("The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute"). The Supreme Court has declined to agree with Plaintiff's efficiency concerns where arbitration may indeed send a case back to court, as doing so would only "create . . . a time-consuming sideshow" of pre-arbitration debate that would only delay resolution even further. *Henry Schein*, 139 S. Ct. at 530-31; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985) ("potential complexity should not suffice to ward off arbitration"). Therefore, the delegation clause is valid, and none of the concerns raised by Plaintiff place the issue of scope of the arbitration agreement within this Court's jurisdiction.

IV.     Federal Statutory Claims

Next, the Court "must consider whether Congress intended [federal statutory] claims to be nonarbitrable." *Guyden*, 544 F.3d at 382. When statutory claims are involved, as they are here, a party can prevent enforcement of the arbitration agreement only by showing that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (finding that Congress did not intend for claims brought under the Sarbanes-Oxley Act of 2002 to be non-arbitrable); *Italian Colors Rest.*, 570 U.S. at 234-38 (finding the same for antitrust claims). Claims under the FCRA are regularly sent to arbitration. *See*, *e.g.*, *Alvarez*, 662 F. Supp. 3d at 27; *Meeks*, 2022 WL 17958634, at *2. The TOU even includes a reference to the FCRA alongside the statutory claims that

plaintiffs may make. (TOU at 3). The Court finds no reason to hold FCRA claims were not intended by Congress to be arbitrable. *See Guyden*, 544F.3d at 382. Therefore, there is no statutory scheme that prevents compelling arbitration.

V.      Stay

Finally, the Court considers whether to stay or dismiss the present proceeding pending the arbitration of claims. *Guyden*, 544 F.3d at 382. The Second Circuit is among jurisdictions that permit a district court to stay, rather than dismiss, claims pending arbitration of those claims. *Katz v. Cellco P'ship*, 794 F.3d 341, 345-47 (2d Cir. 2015) ("[W]hile we recognize the impetus for a rule permitting dismissal, we conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.") Accordingly, Plaintiff's claims against EIS are stayed pending arbitration.

## **CONCLUSION**

For the reasons set forth above, EIS's motion to compel arbitration is granted, Plaintiff's claims against EIS are stayed pending completion of the arbitration.


SO ORDERED.


/s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: March 20, 2024
Brooklyn, NY