IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FAIGY OESTREICHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 1:23-cv-00239 |
| | ) | |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**PLAINTIFF FAIGY OESTREICHER'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT
AS TO DEFENDANT FLAGSTAR BANK**

---

**On the Brief:**

Daniel Zemel, Esq.
ZEMEL LAW LLC
660 Broadway
Paterson, New Jersey 07514
T: (862) 227-3106
dz@zemellawllc.com
Attorneys for the Plaintiff

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   FACTS ........................................................................................................... 3

III.  STANDARD OF REVIEW ............................................................................ 3

IV.   ARGUMENT ................................................................................................. 4

  A.   FCRA Background ..................................................................................... 4

  B.   Inaccuracy ................................................................................................. 5

    1.    Reporting Oestreicher as Delinquent Throughout Her Forbearance Agreement is Inaccurate ............................................................................................... 5

    2.    Omitting Mention of Oestreicher's Forbearance Renders the Reporting Incomplete and Therefore Inaccurate ............................................................................ 9

  C.   Disputes ................................................................................................... 10

  D.   Flagstar's Failure to Conduct a Reasonable Investigation into Plaintiff's Disputes ...... 11

  E.   Flagstar's Willful Violation of the FCRA ............................................... 15

    1.    Legal Background ................................................................................ 15

    2.    Application ........................................................................................... 17

  F.   Flagstar's Negligent Violation of the FCRA ........................................... 18

    1.    Damages ............................................................................................... 19

V.    CONCLUSION ............................................................................................ 20

## TABLE OF AUTHORITIES

Adams v. Berger Chevrolet, Inc., 2001 U.S. Dist. LEXIS 6174, 2001 WL 533811 (W.D. Mich. 2001) ................................................................................................................... 16

Amendoeira v. Monogram Credit Card Bank of Ga., 2007 U.S. Dist. LEXIS 58680, 2007 WL 2325080 (E.D.N.Y. 2007) ................................................................................... 12

Artemov v. TransUnion, LLC, 2020 U.S. Dist. LEXIS 159267, 2020 WL 5211068 (E.D.N.Y. 2020). ...................................................................................................................... 5

Beaudry v. TeleCheck Servs., Inc., 579 F.3d 702 (6th Cir. 2009) ................................ 15

Bradshaw v. BAC Home Loans Servicing, LP, 816 F. Supp. 2d 1066 (D. Or. 2011) .................... 8

Braham v. Clancy, 425 F.3d 177 (2nd Cir. 2005) ........................................................... 3

Brod v. Omya, Inc., 653 F.3d 156 (2d Cir. 2011) ........................................................... 4

Burns v. Bank of Am., 655 F. Supp. 2d 240 (S.D.N.Y. 2010) .......................................... 5, 10, 19

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .............................................................. 3

Chaitoff v. Experian Info. Sols., Inc., 79 F.4th 800 (7th Cir. 2023) .............................. 10

Daugherty v. Ocwen Loan Servicing, LLC, 701 F. App'x 246 (4th Cir. 2017) ............... 16

DeSiena v. Pennsylvania Higher Educ. Assistance Agency, 2023 U.S. App. LEXIS 15020, 2023 WL 4044109 (2d Cir. 2023) ................................................................................. 11

Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ............. 16

Frederick v. Cap. One Bank (USA), N.A., 2018 U.S. Dist. LEXIS 50768, 2018 WL 1583289 (S.D.N.Y. 2018) ............................................................................................................. 12

Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241 (3d Cir. 2012) ........................................... 16

Gorman v. Experian Info. Sols., Inc., 2008 U.S. Dist. LEXIS 94083 (S.D.N.Y. 2008) .............. 19

Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009) ............................ 10, 12

Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295 (11th Cir. 2016) ..................................... 16

Jamaica Ash & Rubbish Removal Co. v. Ferguson, 85 F. Supp. 2d 174 (E.D.N.Y. 2000)............ 3

Jaramillo v. Weyerhaeuser Co., 536 F.3d 140 (2d Cir. 2008) ......................................... 3

Jenkins v. LVNV Funding, LLC, 2017 U.S. Dist. LEXIS 57513, 2017 WL 1323800 (E.D.N.Y.

2017) ............................................................................................................. 12

Kane v. Guaranty Residential Lending, Inc., 2005 U.S. Dist. LEXIS 17052, 2005 WL 1153623

(E.D.N.Y. 2005)................................................................................................ 4

Khan v. Equifax Info. Servs., LLC, 2019 U.S. Dist. LEXIS 100119, 2019 WL 2492762

(E.D.N.Y. 2019) ................................................................................................ 8

Kilpakis v. JPMorgan Chase Fin. Co., LLC, 229 F. Supp. 3d 133 (E.D.N.Y. 2017) ..................... 8

Kudlicki v. Farragut Fin. Corp., 2006 U.S. Dist. LEXIS 20302, 2006 WL 927281 (N.D. Ill.

2006) ............................................................................................................. 16

Lawrence v. Trans Union L.L.C., 296 F. Supp. 2d 582 (E.D. Pa. 2003)..................................... 16

Longman v. Wachovia Bank, N.A., 702 F.3d 148 (2d Cir. 2012).................................................. 4

Markovskaya v. Am. Home Mortg. Servicing, Inc., 867 F. Supp. 2d 340 (E.D.N.Y. 2012). ........ 5

McCoy v. SC Tiger Manor LLC, 2022 U.S. Dist. LEXIS 37022 (M.D. La 2022). .................... 18

Miner v. Clinton County N.Y., 541 F.3d 464 (2d Cir. 2008) ......................................... 4

Myers v. Am. Educ. Servs., 2021 U.S. Dist. LEXIS 42629 (S.D. Ohio 2021). .............. 12, 15, 16

Northrop v. Hoffman of Simsbury, Inc., 12 F. App'x 44 (2d Cir. 2001) ..................................... 15

Okocha v. HSBC Bank USA, N.A., 2010 U.S. Dist. LEXIS 132152 (S.D.N.Y. 2010).............. 11

Okocha v. HSBC Bank USA, N.A., 700 F. Supp. 2d 369 (S.D.N.Y. 2010) ................................ 11

Philbin v. Trans Union Corp., 101 F.3d 957 (3d Cir. 1996)........................................................ 19

Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986)........................................................................ 6

Pittman v. Experian Info. Sols., Inc., 901 F.3d 619 (6th Cir. 2018) .......................................... 9, 18

Robertson v. J.C. Penney Co., 2008 U.S. Dist. LEXIS 17159 (S.D. Miss. 2008) ....................... 12

Rosenberg v. Cavalry Invs., LLC, 2005 U.S. Dist. LEXIS 22788, 2005 WL 2490353 (D. Conn. 2005) ......................................................................................................................................... 12

Ross v. FDIC, 625 F.3d 808 (4th Cir. 2010) .............................................................................. 19

Saenger v. Montefiore Medical Center, 706 F. Supp. 2d 494 (S.D.N.Y. 2010) ............................ 3

Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142 (4th Cir. 2008) .......................... 9

SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133 (2d Cir. 2009) ......................................... 4

Seamans v. Temple Univ., 744 F.3d 853 (3d Cir. 2014) ............................................................... 9

Senno v. Elmsford Union Free School District, 812 F. Supp. 2d 454 (S.D.N.Y. 2011) ............... 3

Sprague v. Salisbury Bank & Tr. Co., 969 F.3d 95 (2d Cir. 2020). ............................................ 11

Williams v. R.H. Donnelley, Corp., 368 F.3d 123 (2d Cir. 2004) ................................................. 4

Plaintiff Faigy Oestreicher respectfully submits this Memorandum of Law in Support of her Motion for Summary Judgment against Defendant Flagstar Bank ("Flagstar" or "Defendant").

## I.    **INTRODUCTION**

This case asks an easy question best illustrated by a comparison between two scenarios. Imagine Consumer A, who took out a thirty-year mortgage; but unexpectedly ran into financial hardship shortly thereafter and was unable to make any payments on the loan so simply ignored the bills. For the months of nonpayment, Consumer A's credit report continuously reflects the non-payment and delinquency. In comparison, Consumer B also took out a mortgage. Consumer B also had a financial downturn as a result of the Covid pandemic. Instead of ignoring the payment obligations of the loan, Consumer B immediately contacted her creditor, advised them of her financial status, and reached an agreement to enter into a forbearance agreement that would temporarily stop her monthly obligations to avoid going delinquent. Consumer B received confirmation that her loan had been entered into a forbearance and so did not make payments on her loan because she believed she was relieved of the obligation to make payments until the forbearance period came to an end.

Should the credit reports of Consumer A and B report the same? Or, should Consumer B's credit report reflect that Consumer B reached an agreement for those months, and had no obligation to pay the monthly payments during the relevant time period? Because potential creditors should see Consumer B as a consumer who is taking responsibility for their obligations, staying in communication with their lenders, and focusing on getting back on track, Consumer B is a significantly less risky borrower, than Consumer A who made no agreement and no payment, thus, Consumer B's credit report is incomplete and misleading if there is no indication of these facts reported.

1

Unfortunately, this is exactly what happened to Mrs. Oestreicher. Despite entering into a forbearance agreement with Flagstar, and having no obligation to make payments in June, July and August 2021, she was reported as delinquent on her credit report with no indication that she had taken the responsible route and requested a brief forbearance period in order to get her finances in order. Obviously, if Plaintiff was in forbearance, with no obligation to make payment, Plaintiff was not late. Therefore, the late reporting on Plaintiff's credit report is inaccurate and misleading. Flagstar presents Plaintiff as an irresponsible debtor—just as one who intentionally skipped out on their payments, when in fact, Plaintiff was acting in direct compliance with Flagstar's instruction and agreement.

While this type of reporting goes against common sense, and the Fair Credit Reporting Act generally, it also directly violates the additions made to the FCRA during Covid. Specifically, the CARES ACT amended the FCRA to provide specific instruction on how to credit report consumers in forbearance. 15 USCS § 1681s-2(a)(1)(F) specifically states that while in a Covid forbearance plan, Data Furnishers must report the consumer as current. The CFPB also provided this general guidance in instructing Data Furnishers on how to report forbearance customers. Nonetheless, while Plaintiff disputed the information with the credit reporting agencies multiple times, Flagstar failed to conduct a reasonable investigation and each time verified that the account should continue reporting as past due, during the forbearance period, consistent with their policies.

No reasonable juror could find that a reasonable investigation by Flagstar concluded with reporting a consumer as delinquent while in forbearance. This is especially the case, where Flagstar informed Plaintiff that the forbearance agreement **would have no credit impact**. Yet, reporting Plaintiff as delinquent during the forbearance period is specifically what Flagstar's policy calls for. This demonstrates reckless disregard for credit reporting accuracy; accordingly, on the issue

2

of willfulness, summary judgment should be granted. Further, to establish negligence, Plaintiff must demonstrate the existence of actual damages caused by Flagstar's actions. Here, Plaintiff was denied credit as a result of the error, and was unable to purchase a home. Accordingly, Plaintiff can establish the existence of *some* damage, as a matter of law, and is also entitled to summary judgment on her negligence claims.

## II.   <u>FACTS</u>

Plaintiff hereby incorporates Plaintiff's Statement of Undisputed Material Facts ("PSUMF").

## III.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000). A party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the aspects of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)). When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Braham v. Clancy,* 425 F.3d 177, 181 (2nd Cir. 2005).

3

"An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the litigation under the governing law." *Id.* (quoting *Miner v. Clinton County N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)). In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

## IV.    ARGUMENT

### A.  FCRA Background

The FCRA was codified to increase the accuracy of credit reports and ensure that consumers have a mechanism to contest inaccurate information. The FCRA "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank*, N.A., 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681(b)). The FCRA prohibits the submission of any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate. *See* 15 U.S.C. § 1681s-2(a)(1)(A). "In order to protect consumers from the harm that can result when inaccurate information is disseminated into their credit reports, the FCRA prescribes specific duties on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Kane v. Guaranty Residential Lending, Inc.*, 2005 U.S. Dist. LEXIS 17052,

4

2005 WL 1153623, at *2 (E.D.N.Y. 2005). A "furnisher" is an entity, like Defendant, that provides information to a CRA and is therefore subject to 15 U.S.C. §§ 1681s-2(b).

To prevail on a claim under 15 U.S.C. § 1681s-2(b), Oestreicher must establish that "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'" *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012). Thus, under the FCRA, when a consumer discovers an inaccuracy on his or her credit report, the consumer must submit a credit dispute to the Consumer Reporting Agency ("CRA"), as opposed to his or her creditor directly. This process triggers an investigative obligation upon the "furnisher." Furnishers have a duty to "investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a [CRA]." *See Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2010). Under § 1681s-2(b), upon notice of dispute about the completeness or accuracy of any information provided by a person to a Credit Reporting Agency (CRA), the furnisher must (1) conduct an investigation; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report any inaccuracies, if found, to all CRAs who may have received the inaccurate information; and (5) correct any inaccuracies in the information. 15 U.S.C. § 1681s-2(b)(1)(A)-(E).

**B.  Inaccuracy**

> 1.  <u>Reporting Oestreicher as Delinquent Throughout Her Forbearance Agreement is Inaccurate</u>

The FCRA was enacted to ensure accurate credit reporting; therefore, to bring a claim for violation of the FCRA, the reported information must be inaccurate. Section 1681s-2(b) requires furnishers to first determine if furnished information is "incomplete or inaccurate." 15 U.S.C. § 1681s-2(b). Accordingly, inaccuracy is "an essential element of a claim for negligent or willful

violation of § 1681s-2(b) of the FCRA." *See Artemov v. TransUnion, LLC*, 2020 U.S. Dist. LEXIS 159267, 2020 WL 5211068, at *3 (E.D.N.Y. 2020). A credit entry can be "inaccurate" within the meaning of the FCRA because it is patently incorrect, or because it is misleading or materially incomplete in such a way and to such an extent that it can be expected to adversely affect credit decisions. *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998) (*citing Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986)); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984); *Van Veen v. Equifax Information Services, LLC.*, 844 F. Supp. 2d 599, 605-06 (E.D. Pa 2012).

On May 15, 2021, Plaintiff went online and filed a disaster Covid Forbearance application with Flagstar. PSUMF ¶4. The forbearance webpage indicated that the "Disaster COVID Forbearance" was completed on May 15, 2021. *Id.* As a result, Flagstar informed Plaintiff: "You are currently on an active forbearance plan that is set to end on 9/1/2021." *Id.,* Exhibit B. 5. Flagstar's corporate representative also testified that the forbearance began in May 2021. PSUMF ¶5; Exhibit D, Flagstar Deposition, 32:9-17. Covid Forbearances issued by Flagstar go in three-month increments. PSUMF ¶6. Thus, the forbearance was effective from May 2021 and initially set to conclude in September 2021. PSUMF ¶6; Exhibit D, 32:12-17. Despite entering into a Covid Forbearance in May 2021, Flagstar reported Plaintiff as 30 days late in June, 60 days late in July, and 90 days late in August 2021. PSUMF ¶7; Exhibit D, 32:13-21; Exhibit G, Exhibit L. The proper way to credit report an account, while in forbearance, is to report the consumer as current. PSUMF ¶8. It is also proper to credit report the consumer as in forbearance during this period. PSUMF ¶8; Exhibit E, Tom Tarter Expert Report, p. 28-29. Instead of reporting Plaintiff as either current or in forbearance, Defendant Flagstar reported Plaintiff Oestreicher as delinquent through

June, July and August, with no indication she was in forbearance. This type of reporting is inaccurate.

The first key question in this case is what exactly a forbearance means. Helpfully, Flagstar explained precisely what this meant to Plaintiff:

> We've already placed your loan in forbearance, which simply means that until December 01, 2021, should you be unable to pay, you will not experience any late fees or negative credit reporting (any pay by phone fees will also be waived during this time).
> Think of the forbearance as a "time out" to give you a chance to deal with your financial disruption, and work to replace your income or employment. _If you can still make payments during forbearance you should, but there will be no late fees or credit impact if you don't_.

Exhibit P. This is precisely what was explained to Oestreicher before entering her forbearance agreement in May 2021. And, relying on this information, Oestreicher agreed to the forbearance.

The second question is how to properly credit report a consumer that is in forbearance. Above, Defendant admits that when a consumer is in forbearance there should be no "credit impact," i.e. delinquent reporting during that period of time. In addition to Defendant's admission, the CFPB provides guidance in its Frequently Asked Questions:

> QUESTION 2: If a furnisher provides a consumer an accommodation, what are its consumer reporting obligations?
>
> ANSWER (UPDATED 6/16/2020): Section 4021 of the CARES Act amends the FCRA to address how furnishers report accounts subject to an accommodation. For more information on what constitutes an accommodation for purposes of the CARES Act, see FAQ #1 above. As noted in FAQ #1, furnishers can grant accommodations voluntarily or pursuant to a statutory or regulatory requirement. The CARES Act provisions addressing how furnishers report accounts subject to an accommodation apply if: (1) a furnisher makes an accommodation with respect to one or more payments on a credit obligation or account of a consumer, and (2) the consumer makes the payments or is not required to make one or more payments pursuant to the accommodation. **If the credit obligation or account was current before the accommodation, during the accommodation the furnisher must continue to report the credit obligation or account as current**.

7

Consumer Reporting FAQs Related to the CARES Act and COVID-19 Pandemic, Version 2, Last Updated on February 23, 2022;[1] In short, so long as the consumer was in good standing at the time the forbearance was entered into, the months during the forbearance need to be reported as current. *Id*. This guidance from the CFPB has become the industry standard for how to report. Exhibit E, p. 15.  Here, Oestreicher was in good standing before she entered into the forbearance agreement. *See* Exhibit N (April and May 2021 paid as agreed). As a result, Oestreicher should have been reported as current during the months of June, July, and August 2021, with a notation that the account was in forbearance. *Id*. at 28.

Despite this obligation, Flagstar reported Oestreicher as delinquent during her forbearance period. PSUMF ¶7. Thus, Defendant's reporting is patently inaccurate. This is especially the case given Flagstar's representation which Oestreicher was entitled to rely on. *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066 (D. Or. 2011) ("[i]f a credit report is intended to reflect a consumer's likelihood of default on his or her debts, then information showing that plaintiffs were more than 120 days late in paying their mortgage even though they made a timely payment each month [**consistent with the agreement reached with the creditor**] is misleading at best.").

*Arguendo*, even if the Court were to determine that credit reporting Oestreicher as delinquent during the entirety of her forbearance period, was patently correct, it was nonetheless misleading. To meet this standard, a plaintiff must establish that the report could adversely impact credit decisions. *See Khan v. Equifax Info. Servs., LLC*, 2019 U.S. Dist. LEXIS 100119, 2019 WL 2492762, at *3 (E.D.N.Y. 2019) ("[A] credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an

---

[1] Last checked on September 15, 2024. Publicly available at:
https://files.consumerfinance.gov/f/documents/cfpb_fcra_consumer_reporting-faqs-covid-19_2020-06.pdf

adverse effect."); *Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 141-42 (E.D.N.Y. 2017) ("[T]his [c]ourt finds that the more flexible approach mandated by the materially misleading standard is appropriate, and provides a method of evaluating compliance with the FCRA that is more closely aligned than its rigid counterpart with the statute's purpose of addressing the serious problem in the credit reporting industry . . . of inaccurate or *misleading* information." (citation and internal quotation marks omitted).

In this case, that adverse impact to credit decisions is easily established, as will be further explained below, because the reporting prevented Oestreicher from obtaining a mortgage loan. Specifically, Mr. Weiss, Plaintiff's mortgage broker, informed her that the Flagstar reporting was a substantial factor in preventing her from obtaining a loan, because it made her appear as seriously delinquent on a mortgage obligation within the past 12 months, in violation of Fannie Mae's underwriting guidelines. Exhibit I. Thus, Oestreicher has established that Defendant's reporting "can be expected to have an adverse credit impact," and; in fact, in her case, the reporting did have said adverse impact.

> 2. Omitting Mention of Oestreicher's Forbearance Renders the Reporting Incomplete and Therefore Inaccurate

Further, even if Flagstar was not obligated to report Oestreicher as current during June, July and August 2021, its reporting is also inaccurate by omission. A credit entry can be "inaccurate" within the meaning of the FCRA because it is <u>materially incomplete</u> in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado*, 158 F.3d at 895; *Koropoulos*, 734 F.2d at 40; *Van Veen*, 844 F. Supp. 2d at 606. "To meet this standard, a plaintiff can show that the information is false or that it contains a material omission or creates a materially misleading impression." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 (6th Cir. 2018); *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (Even if the information in

a credit report "is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression."); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading."); *Chaitoff v. Experian Info. Sols., Inc.,* 79 F.4th 800, 813 (7th Cir. 2023) ("a credit report that creates a materially misleading impression of the borrower's creditworthiness through the omission of accurate information is not accurate"). Here, there is no question that Defendant failed to identify within its reporting to the credit bureaus that Plaintiff was in forbearance beginning in June 2021. Despite her disputes in October 2021 and May 2022, in the ACDV Responses sent to the credit bureaus by Flagstar and the dispute responses sent to Plaintiff, at no time did Flagstar report that Plaintiff's loan was in forbearance. Exhibit F-H, K-M. In fact, Defendant confirmed that it is not their policy to ever do so. *See* PSUMF ¶23, Exhibit D, at 36:11-21, 42:8-18. Had this information not been omitted, it would have provided information to Ark Mortgage or other lenders regarding the status of her Flagstar loan, to be considered prior to denying her mortgage application. By learning that Oestreicher was in fact in forbearance, should not appear as though she was a delinquent debtor.

## C. Disputes

Under the FCRA, furnishers have a duty imposed or "triggered" when a consumer disputes information being reported. *Burns*, 655 F. Supp. 2d at 250 ; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009));15 U.S.C. § 1681i(a)(2) (providing that once a "consumer reporting agency receives notice of a dispute from any consumer . . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute"). These

additional duties are not imposed on furnishers until after there has been a dispute, as such, an actual dispute by Plaintiff to the credit bureaus is required.

Here, it is undisputed that Plaintiff sent disputes to the CRAs regarding the inaccurate reporting on her credit report and the CRAs forwarded those disputes on to Flagstar. *See* Exhibits F-H and Exhibits K-M.

**D. Flagstar's Failure to Conduct a Reasonable Investigation into Plaintiff's Disputes**

Under § 1681s-2(b), upon notice of dispute about the completeness or accuracy of any information provided by a person to a Credit Reporting Agency (CRA), the furnisher must:

(1) conduct an investigation;
(2) review all relevant information provided by the CRA;
(3) report the results of the investigation to the CRA;
(4) report any inaccuracies, if found, to all CRAs who may have received the inaccurate information; and
(5) correct any inaccuracies in the information.

15 U.S.C. §1681s-2(b)(1); *Sprague v. Salisbury Bank & Tr. Co.,* 969 F.3d 95, 99 (2d Cir. 2020).

A data furnisher's liability under the FCRA turns on whether it conducted a "reasonable investigation" in response to a dispute notice to determine whether the disputed information can be verified. *See Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 n.11 (S.D.N.Y. 2010) ("While the FCRA does not state with specificity the type of investigation required, courts have required a 'reasonable investigation' to determine whether disputed information can be verified.") (citation omitted). Although the Second Circuit has not yet decided the "specific contours" of the furnisher's duties, courts within and outside the Second Circuit have assumed an objective reasonableness standard for "judging the adequacy of the required investigation." *Okocha*, 700 F.Supp.2d at 374; *see also DeSiena v. Pennsylvania Higher Educ. Assistance Agency*, 2023 U.S. App. LEXIS 15020, 2023 WL 4044109, at *1 (2d Cir. 2023) ("furnishers must 'reasonably

investigate' upon receiving notice of a dispute regarding the completeness or accuracy of reported information").

The reasonableness of an investigation depends upon the nature and scope of the consumer's dispute. *Okocha v. HSBC Bank USA, N.A.*, 2010 U.S. Dist. LEXIS 132152, [WL] at *6 (S.D.N.Y. 2010) (examining the reasonableness of furnisher of information's investigation based upon "what it was told by the credit bureau"); *see also Jenkins v. LVNV Funding, LLC*, 2017 U.S. Dist. LEXIS 57513, 2017 WL 1323800, at *11 (E.D.N.Y. 2017) ("[T]he central inquiry when assessing a consumer's claim under §1681s-2(b) is whether the furnisher's procedures were reasonable in light of what is learned about the nature of the dispute from the description in the [credit reporting agency's] notice of dispute") (citation omitted). The Court must therefore analyze the reasonableness of Flagstar's actions "in light of what the furnisher learned about the nature of the dispute from the description in the CRA's notice of dispute." *Frederick v. Cap. One Bank (USA), N.A.*, 2018 U.S. Dist. LEXIS 50768, 2018 WL 1583289, at *7 (S.D.N.Y. 2018) (quoting *Gorman*, 584 F.3d at 1157 ).

Generally, the question of reasonableness in FCRA cases presents a fact question for the jury. *Amendoeira v. Monogram Credit Card Bank of Ga.*, 2007 U.S. Dist. LEXIS 58680, 2007 WL 2325080, at *2 (E.D.N.Y. 2007); *Rosenberg v. Cavalry Invs.*, LLC, 2005 U.S. Dist. LEXIS 22788, 2005 WL 2490353, at *5 (D. Conn. 2005) (collecting cases). However, when the investigation is beyond question, the court can find that no reasonable juror could conclude otherwise, and find an investigation unreasonable as a matter of law. *Robertson v. J.C. Penney Co.*, 2008 U.S. Dist. LEXIS 17159, at *24 (S.D. Miss. 2008); *Myers v. Am. Educ. Servs.*, 2021 U.S. Dist. LEXIS 42629, at *23 (S.D. Ohio 2021).

In this case, it is clear from the evidence that Defendant's investigations did not have any degree of careful inquiry, and was instead a shallow, superficial inquiry insufficient to be considered "reasonable" by any stretch of imagination. There is no question that Plaintiff entered into a forbearance agreement that stopped her obligation to make payments each month. SUMF ¶4-5. Further, there is also no question that Flagstar informed Plaintiff that there would be no credit impact as a result of the forbearance agreement. Exhibit P. Despite this, Flagstar reported Plaintiff as 30 days late in June, 60 days late in July, and 90 days late in August 2021. PSUMF ¶7, Exhibit D, 32:13-21; Exhibit G, Exhibit L.

On October 6, 2021, Plaintiff sent a written dispute to the CRAs regarding the account. PSUMF ¶9, Exhibit F. It stated: "Flagstar Bank 646050551- See attached forbearance request, which was prior to the lates. Update my account for the months in forbearance June 2021-August 2021 to paid as agreed." *See Id.*, Exhibit F. The credit bureaus sent ACDVs to Flagstar Bank with Plaintiff's dispute on October 13 and October 15. PSUMF ¶10, Exhibit G, Flagstar ACDV Responses. On October 18 and 19, 2021, TransUnion and Equifax provided responses to Plaintiff following her dispute, indicating that Flagstar had verified the disputed reporting as accurate. *See* PSUMF ¶11, Exhibit H, CRA Responses.

Despite having information regarding the forbearance agreement in their own records and account information, Flagstar verified that the late statuses were reporting correctly on Plaintiff's credit report. *Id.* The proper way to credit report an account, while in forbearance, is to report the consumer as current and to report the consumer as in forbearance during this period. PSUMF ¶8, Exhibit E, Tom Tarter Expert Report, p. 28-29. "Consumers should not be expected to undertake Herculean efforts (such as disputing inaccurate, negative trade line mortgage payment information and having to file a lawsuit) to remove errors contained in their credit reports. The FCRA and the

industry standards of maximum possible accuracy and commercially reasonable credit mortgage payment reporting during forbearance. However, here Flagstar, based on the information produced during discovery, did not comply with standards and/or comply with the FCRA and TILA." Exhibit E, Tarter Report, p. 16.

Flagstar's omission of complete reporting is also undisputed. Despite Plaintiff's entrance into a forbearance plan, per Flagstar's policies and investigation, Ms. Oestreicher's account was not reported with any coding in May, June, July or August of 2021 which would indicate to the credit bureaus or potential lenders that she had entered into a forbearance plan during this time. *Id.,* 36:11-17. Further, despite having the ability to communicate with the credit agencies by email or phone, Flagstar did not take any actions during their investigation to let the credit bureaus know that Ms. Oestreicher was enrolled in a forbearance plan and was not simply delinquent on her loan. *Id.,* 42:2-18.

On May 3, 2022, Plaintiff sent another dispute letter to the CRAs regarding the inaccurate reporting on her credit report by Flagstar Bank. The dispute letter stated: "**FLAGSTAR BANK 646050551****** This account is reporting late during the period of forbearance. I am attaching the confirmation of forbearance request. If Flagstar is telling you that I was late during this period, please don't rely on what they're saying because it's clearly not true and it is significantly impacting my credit and my ability to obtain mortgage financing." PSUMF ¶16. Following this, the credit bureaus forwarded Plaintiff's dispute to Flagstar for investigation and review. PSUMF ¶17. Flagstar responded verifying the account was reporting correctly with June, July and August 2021 marked as late, and that the account had been updated as closed. *Id.,* Exhibit L. At the end of May and beginning of June, Equifax, Experian and TransUnion responded to Plaintiff confirming that the information on Plaintiff's credit file had been verified. PSUMF ¶18, Exhibit M. Plaintiff's

14

July 18, 2022 Credit Report showed that Flagstar was continuing to report inaccurate information regarding Plaintiff being late in June, July and August 2021 when she was actually already in forbearance. PSUMF ¶19, Exhibit N.

Again, upon receipt of Plaintiff's dispute, Flagstar again chose to do nothing and verified the information as accurate, providing no indication that Plaintiff was enrolled in a forbearance plan, despite their own system confirming this information. The reporting of Plaintiff as late throughout the Covid Forbearance period was inconsistent with mortgage industry standards. PSUMF ¶21, Exhibit E, Expert Report of Tarter, p. 17. Flagstar's actions in verifying Plaintiff as late throughout the Covid Forbearance period was inconsistent with mortgage industry standards as they apply to reinvestigations. PSUMF ¶22, Exhibit E, p. 26. This failure to follow credit reporting industry standards, or have the necessary COVID-19 policies and practices to properly address and timely resolve Ms. Oestreicher's disputes of inaccurate delinquent payment credit information demonstrates that no reasonable juror could conclude that its investigation was reasonable. *See* Exhibit E, pg. 24.

**E.  Flagstar's Willful Violation of the FCRA**

    1.  <u>Legal Background</u>

The FCRA provides a private right of action to consumers when any person negligently or willfully fails to comply with the requirements of the statute. 15 U.S.C. 1681n and o. Willful noncompliance results in liability for actual and statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. 1681n(a). Actual damages are not required for a determination of willfulness. *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 703 (6th Cir. 2009). Accordingly, the factfinder need not address whether actual damages exist if the conduct is found willful. *See e.g. Myers v. Am. Educ. Servs.*, 2021 U.S. Dist. LEXIS 42629, at *24 (S.D. Ohio 2021).

15

To have willfully violated § 1681s-2(b), the plaintiff must show that a defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Northrop v. Hoffman of Simsbury, Inc.*, 12 F. App'x 44, 50 (2d Cir. 2001) (citation omitted); "If [plaintiff] . . . can prove that [defendant] adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights," willfulness will be found. *Lawrence v. Trans Union L.L.C.*, 296 F. Supp. 2d 582, 590 (E.D. Pa. 2003) (*citing Cushman*, 115 F.3d at 227). Recklessness is "generally understood [ ] in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.' *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). A defendant's "subjective bad faith" is irrelevant—the test is whether the actor's conduct was "objectively unreasonable." *Fuges v. Sw. Fin. Servs., Ltd*., 707 F.3d 241, 248-49 (3d Cir. 2012).

Willfulness is established by showing that Defendant displayed a reckless disregard for harming the consumer. This can occur by looking at the conduct regarding one specific dispute, like in *Myers v. Am. Educ. Servs.*, 2021 U.S. Dist. LEXIS 42629 (S.D. Ohio Mar. 8, 2021) (court concluded that the handling of both of Myers' disputes was willful because the defendant verified inaccurate information while knowing it did not possess sufficient information to make a proper determination as to its accuracy), or by looking at a series of disputes like in *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 256 (4th Cir. 2017) (plaintiff presented evidence of eight separate disputes, four of which contained account information that was inaccurately showing the plaintiff's account was in foreclosure or was delinquent). *See also Hinkle v. Midland Credit Mgmt., Inc*., 827 F.3d 1295, 1307 (11th Cir. 2016) (finding a willful violation for verifying debts without

16

obtaining sufficient documentation). It can also be established when a defendant "possesse[s] the information in its own records necessary to correct the erroneous data," but fails to do so, or where a defendant's actions are so plainly contrary to the provisions of the FCRA, courts have granted summary judgment for a plaintiff on the issue of willful noncompliance. See *Daugherty,* 701 F. App'x at 256; *Kudlicki v. Farragut Fin. Corp*., 2006 U.S. Dist. LEXIS 20302, 2006 WL 927281 (N.D. Ill. 2006) (summary judgment for plaintiff on wilfulness when it was "clear from the most cursory glance" at defendant's mailer that it did not comply with 15 U.S.C. § 1681b(f)(1); *Adams v. Berger Chevrolet, Inc.,* 2001 U.S. Dist. LEXIS 6174, 2001 WL 533811 (W.D. Mich. 2001) (summary judgment for the plaintiff on willful noncompliance where defendant's employee, in violation of federal criminal law and the FCRA, obtained credit reports for plaintiffs and used it to secure financing for applicants with bad credit histories without the plaintiffs' consent).

2. <u>Application</u>

No reasonable juror could conclude Defendant's investigation, which repeatedly verified delinquent information, was reasonable. To start, Defendant's own internal documents show that it advised Plaintiff that the forbearance would have no credit impact. Exhibit P. Despite this representation, Defendant unambiguously testified that it was company policy to report those in forbearance as late, nonetheless. PSUMF ¶23.  And that is exactly what Defendant did; it repeatedly verified information that Plaintiff was delinquent during her forbearance period. Any look to its own internal documents would have shown that Plaintiff was in forbearance, and therefore, should not be reported as delinquent. Reporting in this manner, objectively creates a high risk of harm that Defendant undoubtedly knew—given its explicit representations to Plaintiff. This is also furthered by the explicit notice provided by the CFPB concerning how to report consumers in forbearance, as well as the Cares Act. Coronavirus Economic Stabilization (Cares

17

Act) 15 U.S.C. §116; Consumer Financial Protection Bureau (CFPB) https://www.consumerfinance.gov. But Defendant disregarded all of this instruction, to Plaintiff's detriment.

Further, Defendant's failure to inform the CRAs that Plaintiff was in forbearance was also a reckless omission. There is no question that this information is material, and should be presented to reflect a more accurate picture of Plaintiff's creditworthiness. In fact, 15 U.S.C. § 1681s-2(b)(1) requires Defendant to provide *complete* information to the CRAs. But again, Defendant's reckless policy, is simply not to report such information despite its obvious.

Defendant has also received ample notice through Circuit Court authority that it should not have reported Plaintiff as delinquent, or at least, without informing the CRAs that Plaintiff was in forbearance. For instance, in *Pittman v. Experian Info. Solutions, Inc*., 901 F.3d 619, the consumer reached a modification agreement with his creditor, to reduce his monthly payment obligations. Despite this agreement, the defendant refused to provide notice of this separate agreement to the CRAs, and reported the consumer as delinquent during this period of time. *Id*. at 638. There, the Sixth Circuit held that reporting the consumer as delinquent, despite the modification, would be considered inaccurate. *Id*. at 637. Further, the Sixth Circuit ruled that the failure to report the existence of the modification agreement rendered the reporting incomplete. *Id*. at 639. There is no material distinction between a modification agreement that effects the payment obligation and a forbearance agreement that effects the payment obligation. Yet, Defendant disregarded this notice, and chose to report inaccurate and incomplete information.

## F. Flagstar's Negligent Violation of the FCRA

Should the Court decline to decide that Flagstar's conduct was willful as a matter of law, it is beyond doubt that Flagstar acted, at the very least, in a negligent manner when conducting the

18

investigations. To establish a claim for negligence, in addition to the statutory elements, claimant must also establish actual damages and causation. *McCoy v. SC Tiger Manor LLC*, 2022 U.S. Dist. LEXIS 37022, at *24 (M.D. La 2022). Plaintiff will address the damages resulting from Defendant's harm below.

1.  Damages

Plaintiff here moves for summary judgment, focusing only on liability while leaving the quantum of damages for the jury to determine. As articulated above, if the Court finds the conduct willful, it need not proceed to the damages analysis. However, if the Court finds Flagstar's conduct merely negligent, Plaintiff can still establish every element of the claim, warranting summary judgment.

To recover actual damages, a plaintiff must establish a "causal relation between the violation of the statute and the loss of credit, or some other harm." *Burns v. Bank of America*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008). While different sorts of damages may arise from credit errors, the causation requirement is limited under the FCRA. "A plaintiff must produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor,' that brought about the denial of credit." *Gorman v. Experian Info. Sols., Inc.,* 2008 U.S. Dist. LEXIS 94083, at *18 (S.D.N.Y. 2008). 'But for causation' is not necessary. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 969 (3d Cir. 1996) (applying substantial factor standard and explaining that FCRA plaintiff is not required to rule out other, possible substantial causes because decisions to deny credit often have more than one cause), *abrogated on other grounds*, 617 F.3d 688 (3d Cir. 2010); *Ross v. FDIC*, 625 F.3d 808, 817 (4th Cir. 2010) (holding that, if there are multiple possible causes for injury, plaintiff must point to evidence that defendant's conduct was substantial cause, not sole cause).

19

While Plaintiff will present the jury with several forms of damages, for purposes of summary judgment, which requires indisputable evidence, Plaintiff will focus only on her inability to obtain a mortgage loan as a result of the error. Mrs. Oestreicher attempted to obtain a mortgage from Ark Mortgage, through her mortgage broker Mayer Weiss in March 2022. Exhibit I. After pulling her credit, he reviewed the derogatory reporting to determine if there would be any issue to her mortgage approval. PSUMF ¶13, Exhibit I. In reviewing her credit, Mr. Weiss discovered that Flagstar was reporting her mortgage delinquent in the months of June, July and August 2021 and advised that she was ineligible for a loan because this reporting made her appear to be a delinquent debtor that neglected her payments by up to 90 days. PSUMF ¶14, 15; Exhibit B; Exhibit I. Thus, credit damages are established through undisputed evidence.

Accordingly, because there is some quantum of undisputed damages, Plaintiff can show actual damages and is entitled to judgment as a matter of law on the question of negligent violation of the FCRA by Flagstar.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court to grant this Motion and enter Judgment in her favor.

Dated: September 16, 2024.

Respectfully Submitted,

<u>/S/ Daniel Zemel</u>
Daniel Zemel, Esq.
ZEMEL LAW LLC
660 Broadway
Paterson, New Jersey 07514
T: (862) 227-3106
dz@zemellawllc.com
Attorneys for the Plaintiff

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September, 2024 a true and correct copy of the

foregoing document was sent to all counsel of record via the Court's ECF system.

  /S/ Daniel Zemel
Daniel Zemel, Esq.