# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------- x
                                        :
FAIGY OESTREICHER,                      :      Case No.: 1:23-cv-00239-RER-LKE
                                        :
               Plaintiff,               :
                                        :
v.                                      :
                                        :
EQUIFAX INFORMATION SERVICES, LLC, et al., :
                                        :
               Defendants.              :
                                        :
----------------------------------------------------------------- x
```

## MEMORANDUM OF LAW OF DEFENDANT FLAGSTAR BANK, N.A. IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**STRADLEY RONON STEVENS & YOUNG, LLP**
100 Park Avenue, Suite 2000
New York, New York 10017
Telephone:  (212) 404-0653
Facsimile:  (646) 682-7180

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

COUNTERSTATEMENT OF MATERIAL FACTS ................................................................... 2

STANDARD OF DECISION ................................................................................................... 2

ARGUMENT… ...................................................................................................................... 2

POINT I    PLAINTIFF'S RELIANCE ON INADMISSIBLE AND SPECULATIVE EXPERT AND LAY
OPINIONS FAILS TO ESTABLISH A PRIMA FACIE FCRA CLAIM, WARRANTING
SUMMARY JUDGMENT FOR FLAGSTAR ....................................................... 3

A.   Tarter's Expert Report Should be Excluded as it Consists of Inadmissible "Net
Opinions" and Fails to Meet the Reliability Standards of Rule 702 and *Daubert* ........ 3

1.   Tarter's Report Lacks Reliable Methodology, Relying Instead on Unsupported
Assertions and Prejudged Interpretation of Cherrypicked Evidence while
Ignoring Contrary Authority and Evidence. ............................................................. 4

2.   Tarter's Report Improperly Proffers Inadmissible Legal Conclusions on Ultimate
Issues, Usurping the Court's Domain ..................................................................... 7

3.   Tarter's Lack of Specialized Expertise in Pandemic-Era Mortgage Servicing and
Credit Reporting Renders His Opinions Unreliable and Unhelpful to the Trier of
Fact. ...................................................................................................................... 8

4.   Tarter's Conclusory and Speculative Opinions on Damages Lack Foundation and
Reliable Methodology, Warranting Exclusion. ........................................................ 8

B.   The Weiss Declaration Must Be Disregarded on Summary Judgment Because It
Asserts New Facts for the First Time While Contradicting the Ark Mortgage Denial
Letter Issued by Mr. Weiss and Failing to Establish Causation ................................... 9

1.   The Weiss Declaration Should Be Disregarded and Excluded Under the Best-
Evidence Rule ......................................................................................................... 11

2.   The Weiss Declaration must be excluded at summary judgment as inadmissible
hearsay or opinion evidence as much as it is being offered to prove the truth of
the matters asserted therein. ................................................................................... 12

C.   Plaintiff's Assertions in PSOMF ¶¶ 8, 13, 15, 21, and 22 Must be Disregarded
as Unsupported by Admissible Evidence, Warranting Summary Judgment for
Flagstar .................................................................................................................... 13

POINT II    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF INACCURATE OR
MISLEADING REPORTING, AS HER ARGUMENTS REST ON DEMONSTRABLE LEGAL

MISCONCEPTIONS, MISCHARACTERIZATIONS OF EVIDENCE, AND RELIANCE ON UNSUBSTANTIATED ALLEGATIONS LACKING BASIS OR PROBATIVE VALUE .......... 14

A. Plaintiff Cannot Establish a Prima Facie Case of Inaccurate Reporting, as Her Motion Rests on Legal Misconceptions, Mischaracterizations of Evidence, and Unsubstantiated Allegations Lacking Probative Value. ............................................ 14

B. Plaintiff Misstates the "Materially Misleading" Standard and Fails to Establish that Omitting Reference to Forbearance Rendered Flagstar's Accurate Reporting Misleading in a Material Way that Would Be Expected to Cause Adverse Credit Consequences.......................................................................................................... 16

C. Omitting Reference to Alleged Forbearance Agreement Did Not Render Flagstar's Reporting Materially Misleading................................................................................ 18

D. Plaintiff's FCRA Claim Fails as a Matter of Law Because Flagstar's Reporting Of Plaintiff's Loan Delinquencies was Factually Accurate Based on the Lack of Payments Received and Timely Hardship Documentation Required For Cares Act Protections................................................................................................................. 21

POINT III   EVEN IF PLAINTIFF'S CHALLENGED REPORTING WAS FACTUALLY INACCURATE OR MATERIALLY MISLEADING, PLAINTIFF FAILS TO AND CANNOT ESTABLISH PRIMA FACIE FLAGSTAR'S INVESTIGATION WAS UNREASONABLE AS A MATTER OF LAW ................................................................................................................. 22

POINT IV   PLAINTIFF'S NEGLIGENCE CLAIM FAILS FOR LACK OF DAMAGES CAUSED BY ANY ALLEGED FCRA VIOLATION AS PLAINTIFF CANNOT ESTABLISH A CAUSAL LINK BETWEEN FLAGSTAR'S ALLEGED FCRA VIOLATION AND ANY ACTUAL DAMAGES, WARRANTING SUMMARY JUDGMENT ..................................................... 24

POINT V   PLAINTIFF'S CONCLUSORY ALLEGATIONS AND FLAWED FORBEARANCE OR CARES ACT CREDIT-REPORTING THEORIES CANNOT MEET HER PRIMA FACIE BURDEN ABSENT ANY EVIDENCE OF FLAGSTAR'S CONSCIOUS DISREGARD OR DELIBERATE VIOLATION OF THE FCRA ................................................................................. 25

CONCLUSION ................................................................................................................. 27

SWDocIDLocation

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. PNC Bank, N.A.*,
  No. 23-1230-BAH, 2024 WL 3937255 (D. Md. Aug. 26, 2024) ....................................17, 19

*Bah v. Nordson Corp.*,
  No. 00-CV-9060 (DAB), 2005 WL 1813023 (S.D.N.Y. Aug. 1, 2005)..................................3

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
  380 F.Supp.2d 334 (S.D.N.Y. 2005)........................................................................9

*Berman v. Parco*,
  986 F.Supp 195 (S.D.N.Y. 1997)...........................................................................26

*Berry v. Marchinkowski*,
  137 F.Supp.3d 495 (S.D.N.Y. 2015)........................................................................13

*Bibbs v. Trans Union LLC*,
  43 F.4th 331 (3d Cir. 2022) ..............................................................................19

*Bolich v. Nelnet Servicing, LLC*,
  8:21-CV-886-CEH-AEP, 2023 WL 4489954 (M.D. Fl. July 12, 2023)..............................21

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) ...............................................................................9

*Boyer v. TransUnion, LLC*,
  No. 3:21-CV-00918 (KAD), 2023 WL 1434005 (D. Conn. Feb. 1, 2023)...........................19

*Brown v. Henderson*,
  257 F.3d 246 (2d Cir. 2001).............................................................................9

*Cacciola v. Selco Balers, Inc.*,
  127 F.Supp.2d 175 (E.D.N.Y. 2001) ....................................................................3

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)..................................................................................3, 4, 5, 7

*Felts v. Wells Fargo Bank, N.A.*,
  893 F.3d 1305 (11th Cir. 2018) .....................................................................16, 20

*In re Fosamax Prod. Liab. Litig.*,
  707 F.3d 189 (2d Cir. 2013) (per curiam)............................................................10

SWDocIDLocation

*In re Fosamax Prods. Liab. Litig.*,
    645 F.Supp.2d 164 (S.D.N.Y. 2009)........................................................4

*Gaft v. Mitsubishi Motor Credit of Am.*,
    2009 WL 3148764 (E.D.N.Y. Sept. 29, 2009) .......................................12

*H. Sand & Co. v. Airtemp Corp.*,
    934 F.2d 450 (2d Cir. 1991)..................................................................12

*Haynes v. N.Y.C Dep't of Corr.*,
    84 F.3d 614 (2d Cir. 1996).............................................................10, 11

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
    198 F.Supp.2d 598 (E.D. Pa. 2002) ........................................................9

*Khan v. Equifax Info. Servs., LLC*,
    2019 WL 2492762 (E.D.N.Y. June 14, 2019) .......................................17

*Kilpakis v. JPMorgan Chase Fin. Co., LLC*,
    229 F.Supp.3d 133 (E.D.N.Y. 2017) ...............................................17, 18

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)............................................................................4, 9

*Lamando v. Rocket Mtge.*,
    3:23-CV-147 (MAD/ML), 2024 WL 264034 (N.D.N.Y. Jan. 24, 2024) ...............18

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004)...................6

*Lujan v. National Wildlife Fed'n*,
    497 U.S. 871 (1990)..............................................................................12

*Macaluso v. Herman Miller, Inc.*,
    No. 01 Civ. 11496, 2005 WL 563169 (S.D.N.Y. Mar. 10, 2005) ........................5, 6

*Mitchell v. Igoe*,
    No. 06–CV–186, 2009 WL 3165659 (N.D.N.Y. Sept. 25, 2009).........................13

*Mushala v. US Bank, N.A.*,
    CV 18-1680 (JDB), 2019 WL 1429523 (D.D.C. Mar. 29, 2019)...............17, 18, 20

*Ortho Diagnostic Sys., Inc. v. Abbott Labs., Inc.*,
    920 F.Supp. 455 (S.D.N.Y.1996)............................................................9

*Peerless Ins. Co. v. Marley Engineered Prods. LLC*,
    No. 05-CV-4848 (AKT), 2008 WL 7440158 (E.D.N.Y. June 12, 2008) ................8

SWDocIDLocation

*Pittman v. Experian Info. Solutions, Inc.*,
    901 F.3d 619 (6th Cir. 2018) .................................................................26

*In re Rezulin Prods. Liab. Litig.*,
    309 F.Supp.2d 531 (S.D.N.Y. 2004).........................................................7

*Rieger v. Orlor, Inc.*,
    427 F.Supp.2d 99 (D. Conn. 2006)...........................................................7

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
    No. 98 CIV. 8272 (RPP), 2003 WL 22124991 (S.D.N.Y. Sept. 15, 2003) ..............9

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007).............................................................................25

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998)..................................................................13

*Severini v. Pennsylvania Higher Educ. Assistance Agency*,
    18-CV-2775 (ER), 2020 WL 1467396 (S.D.N.Y. Mar. 25, 2020) ....................22

*N.Y. ex rel. Spitzer v. St. Francis Hosp.*,
    94 F.Supp.2d 423 (S.D.N.Y. 2000)..........................................................12

*United States v. Gentile*,
    21-CR-54 (RPK) (PK), 2024 WL 3455834 (E.D.N.Y. July 17, 2024)..................7

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)....................................................................4

*Virgin Atlantic Airways Ltd. v. British Airways PLC*,
    69 F.Supp.2d 571 (S.D.N.Y. 1999), *aff'd*, 257 F.3d 256 (2d Cir. 2001)................6

*Wenning v. On-Site Manager, Inc.*,
    2016 WL 3538379 (S.D.N.Y. June 22, 2016) ...................................17, 18

*In re Wireless Tel. Servs. Antitrust Litig.*,
    385 F.Supp.2d 403 (S.D.N.Y.2005)...........................................................9

*Youngman v. Robert Bosch LLC*,
    No. 11-cv-2521 (SLT)(JO), 2014 WL 12829170 (E.D.N.Y. June 17, 2014)...........6

**Statutes**

15 U.S.C. § 1681s-2(b) .............................................................17, 27

15 U.S.C. § 9056(c)(2)(A)-(B) .....................................................15, 16

Fed. R. Civ. P. 56(e) ..................................................................12

SWDocIDLocation

F. R. E. 1002 .................................................................................................................11, 12

F. R. E. 702 and 801 ................................................................................................................3

Fed. R. Civ. P. 56.1 ...............................................................................................................2, 4

SWDocIDLocation

Flagstar Bank, N.A. ("Flagstar"), by and through its attorneys, Stradley Ronon Stevens & Young, LLP, submits this memorandum of law in opposition to Plaintiff Faigy Oestreicher's motion for summary judgment.

PRELIMINARY STATEMENT

Plaintiff's FCRA claim fails as a matter of law because the undisputed facts establish that Flagstar accurately reported Plaintiff's delinquent payments, conducted a reasonable investigation of her disputes, and did not cause any cognizable damages.

Plaintiff's arguments rest on fundamental misinterpretations of the CARES Act and the legal effect of forbearance agreements. Contrary to Plaintiff's assertions, the CARES Act's credit reporting protections did not apply to Plaintiff's loan, which was not federally backed. Nor did Plaintiff submit the required hardship affidavit until August 2021, after the challenged reporting. In any case, Plaintiff made no payments in June, July, or August 2021, and therefore Flagstar's reporting was accurate.

Flagstar reasonably investigated Plaintiff's disputes by reviewing its records and the information provided by the CRAs, and correctly verified the accuracy of the reported delinquencies based on the lack of payments received and the absence of a timely hardship affidavit.

Finally, Plaintiff cannot establish damages because she relies on inadmissible hearsay and conclusory declarations insufficient to prove Flagstar's reporting caused any alleged harm. The record shows Plaintiff had over $1.5 million in outstanding debt, recent delinquencies on other accounts, and numerous inquiries and new accounts opened shortly before her purported mortgage denial.

For these reasons, as detailed further below and in Flagstar's cross-motion for summary judgment, the Court should grant summary judgment in Flagstar's favor and dismiss Plaintiff's FCRA claim in its entirety.

### COUNTERSTATEMENT OF MATERIAL FACTS

To avoid repetition, the Court is respectfully referred to the the Counterstatement of Material Facts accompanying this opposition. The Counterstatement of Material Facts is included in the accompanying Flagstar's Rule 56.1 Response to Plaintiff's Rule 56.1 Statement as "Additional Facts" Nos. 1 through 74, which, together with its exhibits, is incorporated here by reference. "Additional Facts" follow Flagstar's responses to Plaintiff's R. 56.1 assertions. Plaintiff's Rule 56.1 Statement is cited herein as "PSOF," Flagstar's responses to Plaintiff's Rule 56.1 statements are cited as "CSOF Resp.," and Flagstar's Counterstatement of Material Facts is cited as "CSOF."

### STANDARD OF DECISION

To avoid repetition of the applicable legal standards and supporting authorities, the Court is respectfully directed to Flagstar's Memorandum of Law in Support of Summary Judgment, Standard of Decision section (Def. Mem. at 9-11), which is incorporated herein by reference.

### ARGUMENT

As detailed below, Flagstar accurately reported Plaintiff's account information in compliance with the FCRA during the period in question. Even if Flagstar's reporting were inaccurate or materially misleading (it was not), Flagstar conducted a reasonable investigation into the subject two notices of dispute received from CRAs. Finally, even if Plaintiff had a plausible FCRA claim against Flagstar (she does not), Plaintiff cannot establish prima facie that Flagstar engaged in willful or negligent noncompliance with the FCRA, nor can she establish a causal link between any alleged violation and her claimed damages. Plaintiff has also failed to

SWDocIDLocation

provide sufficient evidence to establish that she suffered any actual damages from Flagstar's alleged actions.

### POINT I

### PLAINTIFF'S RELIANCE ON INADMISSIBLE AND SPECULATIVE EXPERT AND LAY OPINIONS FAILS TO ESTABLISH A PRIMA FACIE FCRA CLAIM, WARRANTING SUMMARY JUDGMENT FOR FLAGSTAR

Plaintiff improperly seeks to manufacture fact issues and meet her prima facie burden by relying on the inadmissible and speculative opinions of her proposed expert Thomas Tarter and her mortgage broker Mayer Weiss. But as detailed below, the Tarter Expert Report and Weiss Declaration are riddled with fatal defects that render them inadmissible under Federal Rules of Evidence 702 and 801 and insufficient to meet Plaintiff's burden or manufacture a fact issue on summary judgment.

### A. Tarter's Expert Report Should be Excluded as it Consists of Inadmissible "Net Opinions" and Fails to Meet the Reliability Standards of Rule 702 and _Daubert_

"[I]t is appropriate for a district court to decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment." _Bah v. Nordson Corp._, No. 00-CV-9060 (DAB), 2005 WL 1813023, at *6 (S.D.N.Y. Aug. 1, 2005) (citing _Raskin v. Wyatt Co._, 125 F.3d 55, 66 (2d Cir. 1997)). Evidence contained in an expert's report therefore must be evaluated under Fed. R. Evid. 702 before it is considered in a ruling on the merits of a summary judgment motion." _Cacciola v. Selco Balers, Inc._, 127 F.Supp.2d 175, 180 (E.D.N.Y. 2001). "If a proffer of expert testimony in the form of an expert report is excluded as inadmissible under Rule 702, the summary judgment determination is made on a record that does not include that evidence." _Id._ (citing _Raskin_, 125 F.3d at 66–67).[1]

---

[1] Plaintiff also submits a purported expert report from Blake A. Schoenberg regarding alleged increases in property values. (_See_ Pl.'s Mot., Ex. O.) But Plaintiff fails to present the Schoenberg report as probative of any material fact in her motion, much less explain its relevance to her FCRA claim or how it could support her prima facie case or

Under Federal Rule of Evidence 702, expert testimony is usually admissible where it is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Because of this liberal admissibility standard, the exclusion of expert testimony is warranted only when the district court finds "serious flaws in reasoning or methodology." *In re Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d 164, 173 (S.D.N.Y. 2009). Otherwise, if an expert's testimony falls within "the range where experts might reasonably differ," the duty of determining the weight and sufficiency of the evidence on which the expert relied lies with the jury, rather than the trial court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements under Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert*, 509 U.S. at 593 n.10).

Plaintiff's motion here made no such showing, warranting the exclusion of the Tarter Report for that reason alone. The Tarter report fails to meet the standards for admissibility under Federal Rule of Evidence 702 and *Daubert*, as it consists largely of improper "net opinions" that lack reliable methodology and usurp the role of the Court in determining legal issues.

1. *Tarter's Report Lacks Reliable Methodology, Relying Instead on Unsupported Assertions and Prejudged Interpretation of Cherrypicked Evidence while Ignoring Contrary Authority and Evidence.*

Rather than demonstrating an established methodology, Tarter relies on conclusory statements, personal experience, and vague references to industry standards without citing any specific that Flagstar allegedly violated.[2] (*See* generally Pl. R. 56.1 St. Ex. E. ("Tarter R.")). For

---

create a triable issue. Indeed, Plaintiff's memorandum and Rule 56.1 statement do not even mention the Schoenberg report. So, while Flagstar does not address the Schoenberg report in this opposition, it does not waive whether the Schoenberg submission is admissible at the summary judgment stage or at trial. Flagstar reserves all rights to object to the admissibility and use of the Schoenberg report for any purpose here.

[2] Throughout his report, Tarter refers to "industry standards" and Flagstar's "statutory obligations" under the FCRA in general terms, but does not cite the specific provisions, regulations, or written industry guidelines that Flagstar allegedly violated in conducting its investigation.

-4-

example, Tarter asserts that Flagstar failed to follow "the industry standards" of maximum possible accuracy and commercially reasonable credit reporting during forbearance (Tarter R. at 16), but cites no industry publications or guidelines defining these purported standards.

Moreover, Tarter's conclusions often selectively cherrypicked evidence (*see, e.g.*, *id.* at 20-21, 23-25, 26), ignore contrary evidence (*see*, *e.g.*, *id.* at 23-25), or are based on no evidence at all (*see, e.g.*, *id.* at 25). For instance, he concludes that Flagstar's investigations were unreasonable without considering Flagstar's actual investigative procedures, its response to Plaintiff's dispute, or the full context of its document production and testimony. (*See id.* at 22-26, 28.) Tarter also engages in circular reasoning, arguing that if Flagstar had proper policies and procedures, it would have promptly detected and corrected the allegedly erroneous reporting (*see id.* at 25-26), and then using the assumption of inaccurate information to imply Flagstar's practices were inadequate (*id.*). This flawed methodology cannot provide a reliable basis for his opinions. Moreover:

    a.    Mr. Tarter concludes that Flagstar's claim about not receiving the hardship letter until August is "not credible" without providing a detailed basis for this conclusion. (*See id.* at 17.) While he cites the existence of the May 24, 2021 letter in Flagstar's files, he doesn't explore potential explanations for the discrepancy, fails to consider Flagstar's business records to the contrary, nor provides evidence that Flagstar's statement was intentionally false.

    b.    Mr. Tarter asserts that Flagstar did not examine its own records as part of the investigation but does not point to specific evidence in the record demonstrating this failure. (*See id*. at 25, 26.) This conclusion seems to be inferred from the outcome of the investigation rather than direct evidence of Flagstar's actions, which Mr. Tarter selectively ignores.

    c.    He asserts, "Ms. Oestreicher was current on her contractual payments in June, July and August 2021 and consequently, there was no delinquency" (*id.*, at 20.), which is plainly incorrect, further showing "serious flaws in reasoning or methodology." *Cf., e.g.*, *Macaluso v. Herman Miller, Inc.*, No. 01 Civ. 11496, 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005) (concluding that an expert's testimony must be excluded under *Daubert* "because it is based on incorrect factual assumptions that render all of his subsequent conclusions purely speculative").

    d.    The characterization of Flagstar's conduct as "willful" and "reckless" is presented as a conclusion without detailed factual support. (*See id.* at 26.) While he discusses Flagstar's

SWDocIDLocation

statutory obligations and industry standards, he does not provide compelling evidence, does not reason through, and does not evaluate how the evidence shows what Flagstar did under the circumstances. (*See id.* at 20-25.)

Mr. Tarter opines that the proper way to credit report an account while in forbearance is to report the consumer as current. However, he provides no citation to industry standards, statistical analyses, or peer-reviewed studies to support this assertion. (*See id*. at 12-16.) This falls squarely within the definition of an inadmissible "net opinion." *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (excluding expert testimony as an inadmissible "net opinion" where the expert failed to provide objective support for his conclusions and "made no reference to industry standards or practices, referred to no statistical studies or analyses, and cited no treatises or other professional literature"); *Youngman v. Robert Bosch LLC*, No. 11-cv-2521 (SLT)(JO), 2014 WL 12829170, at *6-7 (E.D.N.Y. June 17, 2014) (excluding expert opinion on the adequacy of product warnings as unreliable where the expert made "conclusory 'net opinion[s]'" but "fail[ed] to provide any empirical research or analysis supporting [his] conclusion"); *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 69 F.Supp.2d 571, 579 (S.D.N.Y. 1999), *aff'd*, 257 F.3d 256 (2d Cir. 2001) (citations omitted) ("[a]n expert's opinion is not a substitute for a plaintiff's obligation to provide evidence of facts that support the applicability of the expert's opinion to the case…. [E]xpert testimony without ... a factual foundation cannot defeat a motion for summary judgment.") Moreover, Tarter cites no case law and ignores statutory and decisional authorities that undermine and contradict his legal conclusion. The foregoing alone spotlights the report's "serious flaws in reasoning or methodology," warranting its exclusion. *See Macaluso, supra.*

SWDocIDLocation

2. *Tarter's Report Improperly Proffers Inadmissible Legal Conclusions on Ultimate Issues, Usurping the Court's Domain.*

Courts routinely exclude expert reports that offer unsupported legal conclusions or usurp the role of the Court. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 541 (S.D.N.Y. 2004) ("Inferences about the intent and motive of parties or others lie outside the bounds of expert testimony."); *Daubert*, 509 U.S. at 591, 593-94 (expert testimony must "assist the trier of fact," be based on sufficient facts or data, and derive from reliable principles and methods applied to the facts of the case). Conclusory statements lacking factual basis and unreliable methodology do not meet these threshold requirements. *See Rieger v. Orlor, Inc.*, 427 F.Supp.2d 99, 103 (D. Conn. 2006).

Here, the Tarter Report brims with bald legal conclusions that invade the province of the Court. For example, Tarter repeatedly opines that Flagstar's conduct was "willful" and its investigations "unreasonable." (*See* Tarter R. at 17, 19, 24, 26, 28.) These are quintessential legal determinations for the Court to make based on the undisputed facts, not the unsubstantiated say-so of Plaintiff's expert. Moreover, Tarter's conclusory statements lack factual support and reliable methodology. He declares Flagstar's investigation unreasonable in a single, unadorned sentence, without analyzing Flagstar's specific procedures or the information it reviewed. (Tarter R. at 26.) Tarter fails to meaningfully address the detailed testimony from Flagstar's employee, John Cleary, regarding the investigation steps. (*Cf.* CSOF ¶¶35-41; Def. Mov. Mem. at 19-21.) This uncontroverted evidence, outlining Flagstar's investigation process, wholly undermines Tarter's summary accusations. Thus, Tarter's conclusion that Flagstar's investigation was unreasonable is "connected to existing data only by the ipse dixit of the expert," warranting exclusion. *Cf. United States v. Gentile*, 21-CR-54 (RPK) (PK), 2024 WL 3455834, at *4 (E.D.N.Y. July 17, 2024).

-7-

3.  *Tarter's Lack of Specialized Expertise in Pandemic-Era Mortgage Servicing and Credit Reporting Renders His Opinions Unreliable and Unhelpful to the Trier of Fact.*

Tarter's report fails to establish specialized knowledge of mortgage servicing or credit reporting practices during the COVID-19 pandemic, undermining the relevance and reliability of his opinions under Federal Rule of Evidence 702. While he offers general observations on forbearance and credit reporting, these lack the specificity and grounding in relevant professional experience to "help the trier of fact to understand the evidence or determine a fact in issue" as required by Rule 702(a). Tarter's general banking background does not qualify him to opine on the reasonableness of Flagstar's specific credit reporting practices during this unprecedented period. *Cf., e.g.*, *Peerless Ins. Co. v. Marley Engineered Prods. LLC*, No. 05-CV-4848 (AKT), 2008 WL 7440158, at *6 (E.D.N.Y. June 12, 2008) (requiring "knowledge, skill, experience, training or education" relevant to specific issue).

4.  *Tarter's Conclusory and Speculative Opinions on Damages Lack Foundation and Reliable Methodology, Warranting Exclusion.*

Tarter baldly asserts that Plaintiff suffered "credit damage" and "emotional distress" due to Flagstar's reporting but conducts no rigorous economic analysis. (*See* Tarter Rep. at 26-28.) He fails to thoroughly examine Plaintiff's credit history, debt-to-income ratio, or other pertinent financial metrics in the record. (*Cf.* CSOF ¶¶45-59, 57-65; Def. Mem. at 22-26.) Crucially, Tarter ignores Plaintiff's own contradictory discovery responses and testimony, where she admitted having no documentary evidence quantifying her damages or showing economic losses attributable to Flagstar's reporting. (*See* Pl.'s Resp. to Interrog. No. 10; Pl.'s Resps. to RFP Nos. 15, 17; Oestreicher Dep. at 95:12-98:14.) These significant concessions—that Plaintiff was overleveraged, had multiple credit inquiries, and other delinquencies—fundamentally undermine Tarter's conclusory opinions.

An expert's failure to consider and connect the actual evidence to his conclusions renders his analysis "essentially worthless" and warrants exclusion. *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F.Supp.2d 403, 428 (S.D.N.Y.2005) ("[Expert's] failure to test for these obvious and significant alternative explanations renders [expert's] analysis essentially worthless." (quotation marks and citation omitted)); *see also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Courts routinely exclude expert damages opinions exhibiting such methodological flaws and evidentiary gaps. *See, e.g., Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F.Supp.2d 334, 354 (S.D.N.Y. 2005); *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F.Supp.2d 598, 607 (E.D. Pa. 2002).

In sum, Tarter's report suffers from "serious flaws in reasoning [and] methodology" that render his opinions unreliable and unhelpful to the trier of fact. His speculative damages opinions, untethered to the factual record, fall outside "the range where experts might reasonably differ." *Kumho*, 526 U.S. at 153. The many flaws and omissions reveal Tarter's agenda was to arrive at pre-determined conclusions supporting Plaintiff's claims, not to conduct an objective review. Accordingly, the Court should exclude Tarter's unreliable opinions.[3]

**B.    <u>The Weiss Declaration Must Be Disregarded on Summary Judgment Because It Asserts New Facts for the First Time While Contradicting the Ark Mortgage Denial Letter Issued by Mr. Weiss and Failing to Establish Causation</u>**

"[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." *Brown v.*

---

[3] *Ortho Diagnostic Sys., Inc. v. Abbott Labs., Inc.*, 920 F.Supp. 455, 471 (S.D.N.Y.1996) ("In order to defeat a properly supported motion for summary judgment, a party may not rest … on conclusory or incomplete expert analyses any more than it may rest on unsubstantiated allegations of its pleadings."); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98 CIV. 8272 (RPP), 2003 WL 22124991, at *3 (S.D.N.Y. Sept. 15, 2003).

SWDocIDLocation

*Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also Haynes v. N.Y.C Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (per curiam) (explaining that "the 'sham issue of fact' doctrine ... prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony").

Here, Plaintiff relies heavily on the declaration of Mayer Weiss, her mortgage broker at Ark Mortgage ("Weiss Declaration"), to argue that Flagstar's reporting was a substantial factor in her mortgage denial and resulting damages. (Pl.'s Mem. at 5-10, 20.) However, the Weiss Declaration, submitted for the first time in opposition to summary judgment, flatly contradicts the Ark Mortgage denial letter issued by Mr. Weiss himself, which Plaintiff has proffered as evidence of the truth of the matters asserted therein. (*Compare* Pl. Ex. I, *with* CSOF Resp. ¶13, *and with* CSOF ¶¶43-56.)  Moreover, the assertions in the Weiss Declaration appear nowhere in discovery and are first made in Plaintiff's cross-motion for summary judgment and in opposition to Flagstar's cross-motion.[4]  Moreover, the Weiss Declaration offers no probative evidence to support its conclusory causation opinion. Although there is no prior deposition testimony of Mr. Weiss, his Declaration materially contradicts the Ark Mortgage denial letter issued by Mr. Weiss, which Plaintiff has introduced as substantive evidence, in several critical respects:

1. While the Weiss Declaration claims Flagstar's reporting was a "major factor" in the denial (Weiss Decl., ¶ 8), the denial letter issued by Mr. Weiss does not mention Flagstar anywhere or attribute the adverse action to Flagstar's credit reporting. (*See* CSOF ¶¶ 52-56; Def.'s Mem. at 21-22);

---

[4] When Flagstar sought to subpoena Ark Mortgage and Mr. Weiss to probe the basis for Plaintiff's damages claims, Plaintiff objected, and non-party discovery was denied. Now, having shielded Mr. Weiss from questioning, Plaintiff seeks to introduce his eleventh-hour declaration to salvage her prima facie burden.

SWDocIDLocation

2. The Weiss Declaration emphasizes Flagstar's reporting, but the Weiss denial letter explicitly states Plaintiff was denied due to "insufficient Credit Score" and lists "Number of recent inquiries" as a principal factor, not any mortgage lates. (*See* CSOF ¶¶ 47-51; Brownstein Decl. Ex. F at 1-2; Def.'s Mem. at 22);

3. Mr. Weiss focuses solely on Flagstar while ignoring the many other adverse credit items cited in his own denial letter, including serious delinquencies on non-Flagstar accounts and other factors that negatively impacted Plaintiff's credit scores. (*See* CSOF ¶¶ 49-50, 60-70; Def.'s Mem. at 22-23);

4. Contrary to the Weiss Declaration's myopic fixation on Flagstar, the Weiss denial letter indicates Ark Mortgage pulled tri-merge reports from Experian, TransUnion and Equifax and relied on Plaintiff's global credit profile, not any single tradeline. (*See* CSOF ¶ 56-59; Brownstein Decl. Ex. F)

These contradictions arise from Mr. Weiss's own statements. Tellingly, Mr. Weiss does not attach his own contradictory Ark Denial letter as an exhibit and does not even mention it. The denial letter is not testimony from a different witness or a third-party record; it is quite literally Mr. Weiss's own prior statement that Plaintiff has introduced as evidence of the truth of the matters asserted. Having proffered the denial letter as substantive proof to support her claim, Plaintiff cannot now submit a conclusory, contradictory declaration from Mr. Weiss that conveniently ignores the letter's content to try to salvage her prima facie case or create a fact issue.

By submitting a declaration that "by omission or addition, contradicts" the very denial letter it is based on, Plaintiff is improperly attempting to manufacture evidence or create a fact issue on causation where none exists. *Cf. Haynes*, 84 F.3d at 619. The Court should thus disregard the Weiss Declaration in its entirety.

1. *The Weiss Declaration Should Be Disregarded and Excluded Under the Best-Evidence Rule.*

The Weiss Declaration should also be disregarded and excluded under the best evidence rule. The best evidence rule, codified in Federal Rule of Evidence 1002, requires the production

-11-

of an original writing to prove its contents, unless otherwise provided by federal statute or rules. *See* Fed. R. Evid. 1002.

Here, the best evidence of the reasons for Plaintiff's mortgage denial is the Ark Mortgage denial letter itself. The denial letter, which was issued by Mr. Weiss, is the original written statement of Ark Mortgage's credit decision and its basis. To the extent the Weiss Declaration asserts facts about the contents and meaning of the denial letter, it violates the best evidence rule and should be excluded. *Cf., e.g.*, *Gaft v. Mitsubishi Motor Credit of Am.*, 2009 WL 3148764, at *4 (E.D.N.Y. Sept. 29, 2009); *N.Y. ex rel. Spitzer v. St. Francis Hosp.*, 94 F.Supp.2d 423, 428 (S.D.N.Y. 2000). Plaintiff has offered the denial letter itself as proof of the reasons for Plaintiff's credit denial, and while Weiss carefully sidesteps his own letter, Plaintiff improperly seeks to have Mr. Weiss "interpret" the letter through his declaration while omitting key portions that undermine his account. This is precisely the type of secondary evidence that the best evidence rule forbids.

2. *The Weiss Declaration must be excluded at summary judgment as inadmissible hearsay or opinion evidence as much as it is being offered to prove the truth of the matters asserted therein.*

The Weiss Declaration constitutes inadmissible hearsay under Rule 801(c), as it contains out-of-court statements offered to prove the truth of the matters asserted regarding the contents of credit reports, underwriting guidelines, and the alleged impact of Flagstar's reporting on Plaintiff's credit denial and damages. Fed. R. Civ. P. 56(e); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991). Moreover, the declaration is replete with conclusory allegations, improper opinion testimony, and unsupported speculation, which cannot create a genuine factual dispute or meet Plaintiff's prima facie burden on summary judgment. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Mr. Weiss offers no factual support or

-12-

foundation for his conclusions, merely parroting Plaintiff's causation theory without objective evidence or analysis.

### C. Plaintiff's Assertions in PSOMF ¶¶ 8, 13, 15, 21, and 22 Must be Disregarded as Unsupported by Admissible Evidence, Warranting Summary Judgment for Flagstar

Plaintiff's Statement of Material Facts and brief rely heavily on the expert report of Tom Tarter and the declaration of Mayer Weiss to support her FCRA claim. (*See* PSOMF ¶¶ 8, 13, 15, 21, and 22.) However, as discussed above, both the Tarter Expert Report and the Weiss Declaration are inadmissible and excludable at the summary judgment stage. So, the Court should disregard the assertions in PSOMF ¶¶ 8, 13, 15, 21, and 22 in the absence of any admissible evidence to support these core assertions. *Cf. e.g.*, *Berry v. Marchinkowski*, 137 F.Supp.3d 495, 502 n.1 (S.D.N.Y. 2015) ("[M]any of the factual assertions in Plaintiff's opposition papers either do not contain citations to the record, or are not supported by the citations in the record. The Court disregards all such assertions.").[5] Stripped of these improper opinions, Plaintiff's Statement of Material Facts and briefing fail and cannot establish a prima facie case that Flagstar's credit reporting was inaccurate, that Flagstar's investigation was unreasonable, that Plaintiff applied for an FCRA-covered and qualified consumer loan with Ark Mortgage, or that Flagstar's reporting caused the alleged Ark Mortgage denial, or her alleged damages - essential elements of her FCRA claim. *Cf. Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

---

[5] *See also Mitchell v. Igoe*, No. 06–CV–186, 2009 WL 3165659, at *8 (N.D.N.Y. Sept. 25, 2009) ("Statements contained within a memorandum ... without proper evidentiary support, do not constitute competent evidence upon which a court may base its ruling upon a motion for summary judgment.")

## POINT II
### PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF INACCURATE OR MISLEADING REPORTING, AS HER ARGUMENTS REST ON DEMONSTRABLE LEGAL MISCONCEPTIONS, MISCHARACTERIZATIONS OF EVIDENCE, AND RELIANCE ON UNSUBSTANTIATED ALLEGATIONS LACKING BASIS OR PROBATIVE VALUE

Plaintiff's FCRA claim against Flagstar rests on the allegation that Flagstar inaccurately reported her loan as delinquent during June, July, and August 2021. Plaintiff's misconceptions and mischaracterizations aside, facts beyond any good faith dispute establish that Flagstar's reporting was neither inaccurate nor materially misleading.

**A.** **Plaintiff Cannot Establish a Prima Facie Case of Inaccurate Reporting, as Her Motion Rests on Legal Misconceptions, Mischaracterizations of Evidence, and Unsubstantiated Allegations Lacking Probative Value.**

First, Plaintiff repeatedly misrepresents the evidence by asserting she was in a "Covid Forbearance" as of May 15, 2021 that required Flagstar to report her account as current. (Pl.'s Mem. at 6-7.) Yet Plaintiff's own Exhibit B and Flagstar's testimony make clear that as of May 15, 2021, Plaintiff was only in Flagstar's standard forbearance for non-government-backed, private Flagstar loans, not the specialized "Disaster COVID Forbearance" that would have triggered credit-reporting protections. (*See* CSOF Resp. No. 4; Cleary Dep. 32:12, 33:7; Ex. B.)

Plaintiff testified she did not submit the required Covid hardship letter in May or June 2021. (*See* CSOF ¶¶ 17; Oestreicher Dep. Tr. 43:18-44:5; 44:7-12; 45:2-10.) Plaintiff's husband's declaration asserting that he drafted and sent the COVID hardship letter on May 29, 2021 fails to submit proof of mailing and cannot overcome the undisputed evidence in Flagstar's business records (Plaintiff's own admission documented therein) that she did not upload the letter until late August 2021. (*Compare* Pl. Ex. Q, *with* CSOF Resp. No. 4; Cleary Dep. 32:12, 33:7; Ex. B.) Consistent with the absence of Plaintiff's evidence to the contrary, Flagstar's probative and admissible records show that it first received Plaintiff's letter in late August 2021, where Flagstar made a contemporaneous August 24, 2021 notation on the account that Plaintiff

-14-

or her husband acknowledged ". . . SENT IN A HARDSHIP LETTER **VIA FAX** . . . **IN JULY, NO DOCS RECD,** . . . BWR SD **WILL UPLOAD LETTER** THEN HUNG UP." (Cleary Decl. Ex. 8 at 17) (emphasis supplied.) This contemporaneous concession undermines the husband's contrary declaration, which appears to be a self-serving attempt to retroactively manufacture a fact issue in the face of documentary evidence. This is insufficient to raise a triable issue as to whether Plaintiff's hardship letter was received timely in May or June 2021.

Moreover, Plaintiff effectively concedes she did not submit the required COVID hardship affidavit to qualify for Disaster COVID Forbearance until late August 2021, after the reported delinquencies. (*See* CSOF Resp. No. 4; CSOF ¶¶ 16-17; Cleary Decl. ¶¶9-10, Ex. 7 and Ex. 8 at 15-16 of 26.) Plaintiff's self-serving assertions cannot overcome this documentary evidence. Regardless, Flagstar's contemporaneous business records documenting it did not receive the letter until late August 2021 is the only probative record evidence on this question. (Cleary Decl. ¶¶9-10, 13, 22-23, Ex. 7 and Ex. 8 at 15-16 of 26; Brownstein Decl., Ex. B, Cleary Dep. 22:4-17, 32:21-33:8, 37:6-38:11.)

In any event, the date when Flagstar received the letter is immaterial because even if it had been received in May 2021, Flagstar still could have lawfully reported Plaintiff's account as delinquent. While inapplicable to Plaintiff's loan, the CARES Act only requires credit reporting protections if the account was current before the accommodation. 15 U.S.C. § 9056(c)(2)(A)-(B). Here, Plaintiff's loan was already delinquent as of May 1, 2021, her first mortgage payment due date, before she even requested forbearance on May 15, 2021.  (CSOF ¶74; Cleary Decl. ¶3, 26 Ex. 2 Note (first payment was due on May 1, 2021, which was never made)). *Cf., e.g.*, *Tomes*, 2023 WL 3995665, at *3. Therefore, the CARES Act's credit-reporting suppression would not have applied even if her loan were eligible for CARES Act accommodation, which it was not.

-15-

*See, e.g.*, *id.* at \*3 (holding that reporting the plaintiff as delinquent during a CARES Act forbearance was not misleading where the plaintiff was delinquent before the forbearance began).

Second, Plaintiff cites no authority supporting her theory that Flagstar was prohibited from accurately reporting delinquencies during a non-CARES-Act or non-COVID-Disaster Flagstar forbearance. Courts have consistently recognized that accurate reporting of missed payments during forbearance is permissible and required under the FCRA. *Cf., e.g.*, *Tomes*, 2023 WL 3995665, at \*3; *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1319 (11th Cir. 2018); (*see* points and authorities at Deft. Mem. at 15.)

Third, Plaintiff's reliance on Flagstar's September 2021 letter is misplaced, as it post-dates the June-August 2021 reporting and pertains only to Plaintiff's placement in a Disaster COVID Forbearance after submitting a hardship affidavit in late August. (*Compare* Pl.'s Ex. P, *with* CSOF 19.)

Fourth, the CFPB guidance Plaintiff invokes is inapplicable because it pertains to CARES Act forbearances, for which Plaintiff did not qualify. (CSOF ¶¶ 2, 5-8, 14-15; 15 U.S.C. § 9056(c)(2)(A)-(B).)

## B. **Plaintiff Misstates the "Materially Misleading" Standard and Fails to Establish that Omitting Reference to Forbearance Rendered Flagstar's Accurate Reporting Misleading in a Material Way that Would Be Expected to Cause Adverse Credit Consequences.**

Plaintiff's contention that Flagstar's reporting was "misleading" (even if accurate) fails as a matter of law and lacks admissible, probative evidence. First, Plaintiff offers no authority suggesting that truthful reporting of delinquencies is misleading just because it may adversely affect credit. Such a rule would swallow the accuracy requirement and bar any negative reporting.

-16-

Second, Plaintiff erroneously argues she need only show Flagstar's reporting "could adversely impact credit decisions." (Pl. Mem. at 8.) However, the cited cases require a higher standard—reporting must be misleading "in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Khan v. Equifax Info. Servs., LLC*, 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (emphasis added); *see also Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F.Supp.3d 133, 141-42 (E.D.N.Y. 2017). And these cases involved far more meaningful omissions that directly impacted the plaintiffs' apparent creditworthiness.[6] By arguing for a lower "could affect" standard, Plaintiff improperly seeks to dilute her burden of proving Flagstar's reporting was so significantly misleading that adverse credit consequences would be expected. The "materially misleading" standard adopted by caselaw requires more.[7]

Plaintiff must show not only that the reporting was materially misleading, but also that it was misleading "in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, at *9 (S.D.N.Y. June

---

[6] *See id.* (adopting the standard that information can be inaccurate if it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions"; finding a report in a plaintiff's credit file misleading because it stated that legal proceedings had been commenced to foreclose on a plaintiff's mortgage because the plaintiff's account was past due but omitted that the plaintiff had consented to the foreclosure "in exchange for being released from and absolved of any continuing personal liability"). *But see Alston v. PNC Bank, N.A.*, No. 23-1230-BAH, 2024 WL 3937255, at *4 n.3 (D. Md. Aug. 26, 2024) (distinguishing *Kilpakis* on grounds that the omission in *Kilpakis* of information about plaintiff being absolved of liability on a foreclosed mortgage was materially misleading, unlike the mere omission of a prior higher credit limit).

[7] *Cf., e.g., Mushala v. US Bank, N.A.*, CV 18-1680 (JDB), 2019 WL 1429523, at *11 (D.D.C. Mar. 29, 2019), in which the Court observed:

> Of course, this "does not mean that a furnisher could be held liable on the merits simply for a failure to report that a debt is disputed." It merely means that such a claim may be stated under section 1681s-2(b), so long as the absence of such a notation is alleged to render the information materially misleading. To succeed on the merits, the "consumer must still convince the finder of fact that the omission of the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect.'" Ultimately, it is "the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b).

-17-

22, 2016) (emphasis added); *see also Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F.Supp.3d 133, 141 (E.D.N.Y. 2017).  Under the "materially misleading test, "mere imprecision . . . does not render information actionable." *Wenning*, 2016 WL 3538379, at \*9. "[A] plaintiff must establish that the information provided" is "open to an interpretation that is directly contradictory to the true information." *Id*.

Thus, even if omitting reference to Plaintiff's forbearance could be construed as incomplete in some respect, Plaintiff offers no evidence or legal basis to conclude that this omission was misleading "to such an extent" that it ***would*** be "expected" to adversely affect credit decisions. Plaintiff's burden is to show the reporting was so significantly and materially misleading that adverse credit consequences ***would*** be anticipated, not merely possible. Her speculative assertion that the reporting "could" impact credit decisions because it allegedly did (without proof) falls far short of this mark. She offers no evidence and does not argue that had forbearance been reported along with her failure to make timely payments, she would not have been denied a mortgage.

### C. <u>Omitting Reference to Alleged Forbearance Agreement Did Not Render Flagstar's Reporting Materially Misleading</u>

Although "[t]he question of whether information that is 'technically correct' is materially misleading is generally a matter for the jury" to decide, where "the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law." *Lamando v. Rocket Mtge.*, 3:23-CV-147 (MAD/ML), 2024 WL 264034, at \*5 (N.D.N.Y. Jan. 24, 2024). To be materially misleading, an omission must be "expected to have an adverse effect" and "directly contradict[] the truth" in a way that paints a substantially inaccurate picture of creditworthiness. *See Mushala*, 2019 WL 1429523, at \*11. Mere technical omissions are insufficient - the omitted

SWDocIDLocation

information must make a real difference in how a lender would assess credit risk. *See Alston v. PNC Bank, N.A.*, 2024 WL 3937255, at *4 (D. Md. Aug. 26, 2024) ("bald assertion that the incomplete reporting as alleged here was 'misleading' is not sufficient to make plausible an assertion that Defendant somehow created a misleading impression resulting in an adverse effect to Plaintiff.")[8]

An omission is not materially misleading where the credit report, read in its entirety, already clearly and accurately conveys the consumer's payment history and current obligations, such that including the omitted information would not alter the essential message understood by a reasonable reader. *Cf., e.g.*, *Boyer v. TransUnion, LLC*, No. 3:21-CV-00918 (KAD), 2023 WL 1434005, at *5 (D. Conn. Feb. 1, 2023) (finding credit report could not reasonably be read to provide any current information on payment obligations where multiple conspicuous statements reflected account was closed with zero balance, and thus argument that past-due pay status notation was misleading "simply makes no sense").

Here, omitting reference to Plaintiff's alleged forbearance status did not render Flagstar's reporting of her missed payments substantially less accurate or misleading.[9] The omitted information does not "contradict or undermine the essential truth" or paint a substantially inaccurate picture of creditworthiness — that Plaintiff failed to make several months of payments that were contractually due under her mortgage. (CSOF ¶¶ 25-28.) Nor is omitting a reference to forbearance while reporting delinquent payment status "open to an interpretation that is directly contradictory to the true information."

---

[8] The Third Circuit recently adopted a "reasonable reader" standard, explaining that to determine whether an entry is misleading, "a court must make such a determination by reading the entry not in isolation, but rather by reading the report in its entirety." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 343 (3d Cir. 2022).

[9] The "possibility of further clarity" by mentioning the forbearance agreement "is not an indication of vagueness." *Cf., e.g.*, *Bibbs*, 43 F.4th at 344.

-19-

The key facts were already very clear without it. Even if Plaintiff were in forbearance, this did not eliminate her underlying contractual obligation to make those payments - at most, it provided temporary relief from default and its consequences. (CSOF ¶¶ 23-24, 74.) A lender would still see a borrower in default on her original mortgage terms and understand her to be a higher credit risk on that basis. This is especially true here, where Plaintiff was already delinquent before she sought forbearance accommodation. (CSOF ¶ 74.) The key fact for evaluating Plaintiff's creditworthiness, her failure to pay, remains clear. The omission of a forbearance notation along with missed payments does not create a "materially misleading impression" because forbearance denotes and implies a lack of payments despite agreed-upon loan terms. *Cf. e.g.*, *Tomes*, 2023 WL 3995665, at *3-4 (rejecting argument that reporting delinquencies during forbearance was misleading where the reporting accurately reflected that the plaintiff had not become current on the loan). No omitted information could have negated the adverse inference from her failure to pay.

Unlike cases finding actionable omissions, the alleged forbearance here would not have provided significant mitigating context that could be expected to materially alter a lender's interpretation of Plaintiff's delinquencies. *Cf., e.g.*, *Mushala*, 2019 WL 1429523, at *11 (omission could be material where furnisher failed to report consumer's "successful completion of a TPP" or "an agreement releasing Plaintiff from liability for the debt"). Plaintiff remained in contractual default during the months at issue regardless of any forbearance. (*See* CSOF ¶ 23.) When read together, the missed payments, with or without a forbearance notation, would not mislead a reasonable reader regarding the plaintiff's failure to pay her obligations as agreed under the loan documents and the concomitant credit risk. *Cf. e.g.*, *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1318-19 (11th Cir. 2018) (holding that reporting a borrower as delinquent

-20-

during a partial payment plan was not materially misleading, even if technically accurate, where the borrower still owed full payments under the original note and the credit report disclosed the existence of a partial payment agreement); *Cf. also Bolich v. Nelnet Servicing, LLC*, 8:21-CV-886-CEH-AEP, 2023 WL 4489954, at *5 (M.D. Fl. July 12, 2023) (granting summary judgment to furnisher on claim that reporting loan as 90 days past due during month later covered by retroactive forbearance was misleading).

> **D. <u>Plaintiff's FCRA Claim Fails as a Matter of Law Because Flagstar's Reporting Of Plaintiff's Loan Delinquencies was Factually Accurate Based on the Lack of Payments Received and Timely Hardship Documentation Required For Cares Act Protections</u>**

To avoid repetition of factual and legal analysis and supporting authorities on these points, the Court is respectfully directed to Flagstar's Memorandum of Law in Support of Summary Judgment, Point I.A.1 (establishing that Plaintiff's loan was not a "Federally backed mortgage loan" subject to the CARES Act credit reporting protections) (Def. Mem. at 13), Point I.A.2 (demonstrating that even for qualifying loans, the CARES Act only mandates forbearance-related credit reporting protections if the borrower submits a written request and hardship affirmation, which Plaintiff failed to timely provide) (Def. Mem. at 14), Point I.A.3 (showing that Flagstar's reporting of late payments for June-August 2021 was factually accurate because it is undisputed that Plaintiff made no payments during those months) (Def. Mem. at 14-15), and Point I.A.4 (explaining that forbearance does not eliminate the borrower's underlying obligation to make payments in accordance with the loan documents, and therefore does not render the reporting of missed payments inaccurate) (Def. Mem. at 15), which are incorporated herein.

In sum, Plaintiff's FCRA claim fails as a matter of law because the undisputed facts establish that (1) the CARES Act's credit reporting protections did not apply to Plaintiff's non-federally backed loan, (2) Plaintiff made no payments during the relevant time period, and (3)

Plaintiff failed to timely submit the required hardship affidavit to trigger any forbearance-related credit reporting protections.

### POINT III

### EVEN IF PLAINTIFF'S CHALLENGED REPORTING WAS FACTUALLY INACCURATE OR MATERIALLY MISLEADING, PLAINTIFF FAILS TO AND CANNOT ESTABLISH PRIMA FACIE FLAGSTAR'S INVESTIGATION WAS UNREASONABLE AS A MATTER OF LAW

Plaintiff boldly asserts "it is clear from the evidence that Defendant's investigations did not have any degree of careful inquiry, and was instead a shallow, superficial inquiry insufficient to be considered 'reasonable' by any stretch of imagination." (Pl. Mem. at 13). However, this hyperbolic rhetoric lacks any meaningful analysis of what Flagstar actually did, which is detailed in the uncontroverted testimony of its corporate representative John Cleary.

To avoid repetition of factual and legal analysis and supporting authorities on this point, the Court is respectfully directed to Flagstar's Memorandum of Law in Support of Summary Judgment, Point II.A (establishing that Flagstar reviewed all relevant information in its possession and verified the accuracy of the reported delinquencies based on the lack of payments and absence of a written hardship affidavit) (Def. Mem. at 19-21), and Point II.B (demonstrating that Flagstar's investigation was reasonable under the particular circumstances based on the nature of the disputes and information available at the time) (Def. Mem. at 21-22), which are incorporated herein.

Based on this comprehensive review, Flagstar reasonably concluded it had accurately reported the status of Plaintiff's loan, including the late payments in June, July, and August 2021, and that no corrections to its prior reporting were necessary given the lack of payments received during those months and the absence of a written forbearance agreement or COVID-19 hardship affidavit from Plaintiff prior to the disputes. (*See* CSOF ¶¶ 20-22, 37-41.) No reasonable jury could find this investigation superficial or objectively unreasonable. *Cf. e.g.*, *Severini v.*

-22-

*Pennsylvania Higher Educ. Assistance Agency*, 18-CV-2775 (ER), 2020 WL 1467396, at \*5-6 (S.D.N.Y. Mar. 25, 2020) (furnisher's review of plaintiff's dispute, materials provided to CRAs, and own records to verify accuracy was objectively reasonable).

Rather than pointing to any specific deficiencies in Flagstar's investigative procedures or information considered, Plaintiff relies on unsupported assertions that Flagstar was required to automatically report her account as current based on an alleged forbearance agreement. (Pl. Mem. at 7-8, 14.) However, these arguments rest on demonstrably false premises that the forbearance stopped her payment obligations and that "Flagstar informed Plaintiff that there would be no credit impact as a result of the forbearance agreement." (*Id*. at 14.) The September 1, 2021 letter Plaintiff mischaracterizes, in fact, post-dates the reporting at issue and refers to prospective credit reporting protections COVID Disaster forbearance after Plaintiff submitted her hardship affidavit in late August 2021. (*See* CSOF ¶¶ 18-19; Ex. P.)

There is no evidence Flagstar made any representations to Plaintiff about the credit consequences of forbearance before the June-August 2021 credit reporting. Nor does Plaintiff provide any factual support for her bald assertion that "[t]he reporting of Plaintiff as late throughout the Covid Forbearance period was inconsistent with mortgage industry standards." (Pl. Mem. at 14.) This statement rests entirely on conclusory, inadmissible expert opinion that lacks foundation and is belied by the CARES Act allowance for delinquent reporting where the loan was delinquent prior to the COVID forbearance accommodation.  (*See* Point I.A and II.B, *supra*.)

Finally, Plaintiff's contentions about the reasonableness of Flagstar's investigation of her May 2022 dispute are legally irrelevant, as they post-date and cannot be causally linked to the only alleged harm for which she seeks to recover—the alleged April 2022 Ark Mortgage credit

SWDocIDLocation

denial. (Compl. ¶¶13-20; CSOF ¶43.) Regardless, Flagstar again reasonably verified the accuracy of the prior reporting in response to the May 2022 dispute because the June-August 2021 reporting remained factually accurate. (CSOF ¶¶16-19, 41-44.)

### POINT IV
### PLAINTIFF'S NEGLIGENCE CLAIM FAILS FOR LACK OF DAMAGES CAUSED BY ANY ALLEGED FCRA VIOLATION AS PLAINTIFF CANNOT ESTABLISH A CAUSAL LINK BETWEEN FLAGSTAR'S ALLEGED FCRA VIOLATION AND ANY ACTUAL DAMAGES, WARRANTING SUMMARY JUDGMENT

Even if Plaintiff could establish a negligent violation of the FCRA by Flagstar—which she cannot for the reasons discussed above—her claim still fails because she has not adduced sufficient admissible evidence that any inaccuracy in Flagstar's reporting caused her actual damages. To avoid repetition of factual and legal analysis and supporting authorities on these points, the Court is respectfully directed to Flagstar's Memorandum of Law in Support of Summary Judgment, Point III (demonstrating that Plaintiff cannot establish a causal link between any alleged FCRA violation by Flagstar and her claimed damages) (Def. Mem. at 22-27), which are incorporated herein.

Plaintiff seeks to salvage her causation burden by submitting the Weiss Declaration (Pl. Mem. at 19, Ex. I), but this declaration is also inadmissible and insufficient to establish causation for the reasons detailed in Point I.B, supra. Even if the Weiss Declaration were considered, it is plainly insufficient to establish causation given the lack of documentary support and the extensive evidence of other negative factors adversely affecting Plaintiff's creditworthiness, such as her over $1.5 million in outstanding debt, recent delinquencies on other mortgages, ballooning credit use, and numerous newly opened tradelines and inquiries (*see* CSOF ¶¶57-70). No reasonable jury could conclude that Flagstar's reporting of three delinquencies on the subject loan was a "substantial factor" in Ark Mortgage's purported denial decision given Plaintiff's overall credit profile.

-24-

## POINT V

### PLAINTIFF'S CONCLUSORY ALLEGATIONS AND FLAWED FORBEARANCE OR CARES ACT CREDIT-REPORTING THEORIES CANNOT MEET HER PRIMA FACIE BURDEN ABSENT ANY EVIDENCE OF FLAGSTAR'S CONSCIOUS DISREGARD OR DELIBERATE VIOLATION OF THE FCRA

Plaintiff has adduced no evidence that Flagstar willfully violated the FCRA. The undisputed facts show Flagstar had a reasonable, good-faith basis for its reporting and investigations. To avoid repetition of factual and legal analysis and supporting authorities on these points, the Court is respectfully directed to Flagstar's Memorandum of Law in Support of Summary Judgment, Point IV (detailing why Plaintiff cannot establish that Flagstar consciously disregarded or deliberately violated the FCRA and that Flagstar had a reasonable, good faith basis for its reporting and investigations based on the information available at the time) (Def. Mem. at 27-29), which is incorporated herein.

Flagstar concluded its reporting was accurate based on the lack of payments, a written forbearance agreement, and a COVID hardship affidavit from Plaintiff prior to the June-August 2021 reporting. (*See* CSOF ¶¶36-40, 42; Def. Mem. at 28). Upon receiving ACDVs, Flagstar promptly investigated using its established FCRA procedures. (SOF ¶¶35-41; Def. Mem. at 28). Flagstar made a reasonable interpretation of its reporting obligations based on the information available at the time: Plaintiff failed to make payments; she was ineligible for COVID-related credit-reporting suppression; and even if she had qualified for CARES Act accommodations (her loan did not qualify), Flagstar still could have reported her delinquent payments under the CARES Act as she was already delinquent prior to requesting forbearance. (*See* SOF ¶ 74). Even an erroneous interpretation, which is not the case here, does not establish willfulness. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

Rather than pointing to any concrete evidence of a knowing or reckless violation, Plaintiff relies on a misguided theory that Flagstar was required to automatically suppress reporting under

SWDocIDLocation

the CARES Act. (Pl. Mem. at 17-18; Compl. ¶¶ 9-12). However, the CARES Act did not apply to Plaintiff's non-federally backed loan, and Plaintiff did not timely provide the requisite hardship verification. (CSOF ¶¶ 11, 13-20; Def. Mem. at 28). Plaintiff's flawed premises and conclusory assertions do not substitute for evidence of willful misconduct. Courts routinely "grant summary judgment . . . against plaintiffs" who fail to offer affirmative proof of furnishers' "willful conduct." *Berman v. Parco*, 986 F.Supp 195, 200 (S.D.N.Y. 1997).

Plaintiff's reliance on *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619 (6th Cir. 2018), to argue the materiality of Flagstar's alleged omissions is unavailing. (Pl. Mem. at 18.) *Pittman* involved a furnisher's failure to report the existence of a loan modification agreement that ***legally changed the consumer's payment obligations***, rendering the unqualified reporting of delinquencies inaccurate and misleading. 901 F.3d at 628-29, 637-39 (emphasis supplied). Here, by contrast, there was no written forbearance agreement binding on Flagstar at the time of the June-August 2021 reporting (CSOF ¶¶ 14-17), Plaintiff's payment obligations remained contractually intact, and Plaintiff concedes she made no payments in those months (CSOF ¶ 20-23). Unlike the permanent modification in *Pittman*, short-term forbearance does not eliminate the borrower's preexisting duty to make contractual payments (CSOF ¶ 20) and, therefore, does not render the reporting of missed payments inaccurate or incomplete or the omission of a forbearance omission material. (*See* Point II.C., *supra*.)

Plaintiff's FCRA claim against Flagstar hinges entirely on her flawed understanding of the CARES Act and the consequences of loan forbearance. This erroneous interpretation thoroughly undermines any suggestion of willful or bad faith conduct by Flagstar. (Def. Mem. at 28). A mere disagreement over the meaning of forbearance does not establish a prima facie case of willful FCRA violation.

-26-

## CONCLUSION

The record facts that should be beyond any good-faith dispute conclusively establish that Plaintiff's FCRA claim under 15 U.S.C. § 1681s-2(b) against Flagstar fails as a matter of law for multiple independent reasons. Plaintiff's claim rests on misguided theories and conclusory allegations that cannot meet her prima facie burden nor sustain a triable issue. Moreover, Plaintiff's motion papers fail to adduce admissible evidence establishing a prima facie case on the essential elements of a claim under 15 U.S.C. § 1681s-2(b). Specifically, Plaintiff has not met her threshold burden of demonstrating that Flagstar's reporting was inaccurate or materially misleading, that Flagstar's investigation was unreasonable, or that she suffered compensable damages caused by Flagstar's alleged FCRA violations. Absent such evidence, Plaintiff cannot make out a prima facie FCRA claim, and the burden does not shift to Flagstar to raise triable issues. This record showing Plaintiff's inability to meet her burden here or at trial compels only one conclusion—Plaintiff's motion for summary judgment on her FCRA claim against Flagstar must be denied in its entirety, and summary judgment should be granted in Flagstar's favor dismissing this claim.

Respectfully submitted,

Dated: October 16, 2024      STRADLEY RONON STEVENS & YOUNG, LLP
      New York, NY

      By:    */s/ Boris Brownstein*
            Boris Brownstein, Esq.
            100 Park Avenue, Suite 2000
            New York, New York 10017
            Telephone:  (212) 404-0653
            Facsimile:  (646) 682-7180
            bbrownstein@stradley.com

SWDocIDLocation