IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIGY OESTREICHER,         )<br>                            )<br>          Plaintiff,        )<br>     v.                     )     Case No.: 1:23-cv-00239<br>                            )<br>EQUIFAX INFORMATION SERVICES,)<br>LLC, *et al*.                )<br>                            )<br>          Defendants.       )<br>_____) | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

On the Brief:

/s/ Daniel Zemel
Daniel Zemel, Esq.
**Zemel Law, LLC**
400 Sylvan Ave., Suite 200
Englewood Cliffs, New Jersey 07632
(T) 862-227-3106
dz@zemellawllc.com

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ........................................................................................................................ 1

   A.   Plaintiff Can Rely on the Evidence she Submitted on Summary Judgment ........................ 1

      i.   The Weiss Declaration is Admissible ................................................................. 7

      ii.  Plaintiff's Assertions in the Statement of Facts are Supported by the Expert Report and Weiss Declaration ................................................................................................ 10

   B.   Defendant's Arguments as to Inaccuracy Fail ..................................................... 11

   C.   Defendant's Investigations were Unreasonable Under § 1681i ......................................... 13

   D.   Actual Damages and Causation ............................................................................ 14

   E.   Willfulness ............................................................................................................ 14

III. CONCLUSION ................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Alaska Rent-A-Car, Inc. v. Avis Budget Grp., 738 F.3d 960 (9th Cir. 2013) ................................ 2

Anderson v. Allstate Ins. Co., 2021 U.S. Dist. LEXIS 16704 (M.D. La. 2021) ............................ 2

Betterbox Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325 (3d Cir. 2001) ................................. 2

Brown v. Henderson, 257 F.3d 246 (2d Cir. 2001) ........................................................................ 7

Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206 (S.D.N.Y. 2007) ......................... 8

Chaitoff v. Experian Info. Sols., Inc., 79 F.4th 800 (7th Cir. 2023) ................................. 12, 13, 14

City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036 (9th Cir. 2014) ......................................... 2

Coulter v. Chase Bank USA, N.A., 2020 U.S. Dist. LEXIS 179895 (E.D. Pa. 2020) ................... 6

Dahlgren v. Muldrow, 2008 U.S. Dist. LEXIS 4103 (N.D. Fla. 2008) ......................................... 5

Downs v. River City Group, LLC, 2015 U.S. Dist. LEXIS 18217 (D. Nev. 2015) ....................... 6

Ellis v. Pa. Higher Educ. Assistance Agcy., 2008 U.S. Dist. LEXIS 112150 (C.D. Cal. 2008) 6, 7

FDIC v. Arcadia Marine, Inc., 642 F. Supp. 1157 (S.D.N.Y. 1986) ........................................... 10

Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305 (11th Cir. 2018) .............................................. 13

Frazier v. Dovenmuehle Mortgage, Inc., 72 F.4th 769 (7th Cir. 2023) ....................................... 12

Hangartner v. Provident Life & Accident Ins. Co., 373 F.3d 998 (9th Cir. 2004). ....................... 2

In re Fosamax Prods. Liab. Litig., 707 F.3d 189 (2d Cir. 2013). .................................................. 9

Kiva Kitchen & Bath, Inc. v. Capital Distrib. Inc., 319 Fed. Appx. 316 (5th Cir. 2009) .............. 9

Lippe v. Bairnco Corp., 288 B.R. 678, 689 (S.D.N.Y. 2003) ....................................................... 4

Ma v. Equifax Info. Servs., LLC, 288 F. Supp. 3d 1360 (N.D. Ga. 2017) .................................... 5

McDonough v. JPMorgan Chase Bank, N.A., 2016 U.S. Dist. LEXIS 12755 (E.D.Mo. 2016) .... 5

Morris v. Credit Bureau of Cincinnati, 563 F. Supp. 962 (S.D. Ohio 1983) .............................. 13

Nelski v. Trans Union, LLC, 86 Fed. Appx. 840 (6th Cir. 2004) ................................................ 13

Nelson v. Equifax Info. Servs., LLC, 522 F. Supp. 1222 (C.D.Cal. 2007) .................................... 7

New York v. St. Francis Hosp., 94 F. Supp. 2d 423 (S.D.N.Y. 2000) .......................................... 10

Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572 (2d Cir. 1969) ....................................... 9

Pittman v. Experian Info. Sols., 901 F.3d 619 (6th Cir. 2018) ...................................................... 13

Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096 (8th Cir. 2006).................................................. 5

Seamans v. Temple Univ., 744 F.3d 853 (3d Cir. 2014) ................................................................. 6

Tomes v. LoanCare, LLC, 2023 U.S. Dist. LEXIS 103735 (D. Kan. 2023) ................................. 12

UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 8255 (3d Cir. 2020)... 2

Youngman v. Robert Bosch LLC, 2014 U.S. Dist. LEXIS 204528 (E.D.N.Y. 2014) ................... 4

## I.   INTRODUCTION

Defendant's Opposition to Plaintiff's Motion for Summary Judgment, while lengthy, still hinges on one basic disagreement between the parties. Defendant contends that Plaintiff was not entitled to any CARES Act protection in regards to her credit reporting because her loan was not federally backed. Never mind that the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") does not distinguish between federally-backed forbearances and non-federally-backed forbearances. Never mind that the mere existence of a forbearance still demands a mention in the credit reporting because it drastically changes the outlook on a delinquent reporting. The fact is, Defendant woefully misread the plain language of the FCRA and made a terrible mistake in its policy. Now, hoping to distract from its incompetence, Defendant throws a myriad of other, equally dismissible arguments at the Court. Because Defendant cannot attack the legal points, Defendant's new arguments include attacking Plaintiff's witnesses and demanding documentary proof to back up their testimony that is within their own personal knowledge. But, as will be seen, these arguments do not succeed.

## II.   ARGUMENT

### A. Plaintiff Can Rely on the Evidence she Submitted on Summary Judgment

Defendant starts out its opposition seeking to exclude proper evidence because the evidence is unfavorable to its argument. But both the Tartar Expert Report and the Weiss Declaration are admissible on summary judgment.

#### 1. The Tarter Expert Report is Reliable

Succinctly, Defendant argues that Tarter's opinion are not reliable because they are unsupported by documents and express legal opinions. For the following reasons, this is incorrect.

1

Under *Daubert*, a "trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 8255, 832 (3d Cir. 2020). The Daubert analysis has been extended to the kind of "technical or other specialized knowledge" beyond scientific knowledge. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). In cases not involving scientific testimony, "[t]he factor identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2001) (*citing Kumho Tire Co., Ltd.*, 526 U.S. at 152). Instead, the "relevant reliability concerns may focus upon personal knowledge or experience." *Id*.

An opinion that is unsupported by the facts cannot be considered reliable. "The question is whether the expert considered enough information to make the proffered opinion reliable." *Anderson v. Allstate Ins. Co.*, 2021 U.S. Dist. LEXIS 16704, at *31 (M.D. La. Jan. 28, 2021) (*citing* 29 Victor J. Gold, *Federal Practice & Procedure* § 6268 (2d ed. 2020)). An expert may rely on the kinds of facts and data experts in the field would typically rely on, even if those facts or data would be otherwise inadmissible. Fed. R. Evid. 703. The district court's role is to "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *City of Pomona v. SQM N. Am. Corp.,* 750 F.3d 1036, 1044 (9th Cir. 2014) (quoting *Alaska Rent-A-Car*, 738 F.3d 960, 969 (9th Cir. 2013)). Challenges regarding the nature of evidence the expert relied on go "more to the 'weight' of [the expert's] testimony—an issue properly explored during direct and cross-examination." *Hangartner v. Provident Life & Accident*

2

*Ins. Co.,* 373 F.3d 998, 1017 n.14 (9th Cir. 2004). This is particularly true where the expert's analysis relies in part on the expert's knowledge of an industry. *Id.*

Here, Defendant merely challenges the evidence relied on by Tarter. For instance, Defendant states that Tarter's opinion regarding the reasonableness of its procedures did not consider the actual procedures, the response to the dispute, or the full context of the document production and testimony. There is no support for Defendant's statement that these items were not considered. In fact, Mr. Tarter's opinion lists an exhaustive number of documents that he reviewed and relied on, including deposition testimony from Defendant that spoke about, *inter alia*, Defendant's actual procedures and Defendant's response to the dispute. Tarter Report, p. 7-8. Defendant specifically asserts four points are from flawed methodology, but each relies on facts from the case. For instance, Mr. Tarter's opinion that Flagstar's claim about not receiving the hardship letter until August not being credible is based on the documents in Flagstar's file. No more basis is needed. It is not Mr. Tarter's job to "explore potential explanations for the discrepancy" or explain away Defendant's problems. Further, the conclusion that Flagstar did not examine its own records is obvious because it missed several key pieces of information. The alternative is that it saw those documents and ignored them. The assertion that Ms. Oestreicher was current on her account is not plainly incorrect, as Mr. Tarter is clearly talking about how she should be reported under the FCRA, which states that she should be reported as current. Finally, Tarter's conclusions as to Flagstar's intent are based on his observation that Defendant "did not apply the necessary higher-level credit correction steps to fully resolve Ms. Oestreicher's delinquent payment credit reporting difficulties." Tarter Report, p. 25. Based on his experience in the industry, this level of disregard was "callous." *Id.* at 26.

Defendant also takes umbrage with the fact that Tarter relies on the industry standard without citing to industry publications or guidelines defining the standard. Defendant does not cite to any "industry publications" or "guidelines" that cover the topic or state the opposite. Yet Mr. Tarter himself lists the credit industry standards and those he specifically relied on in his report. Tarter Report, p. 8-9. "Credit industry standards are found in many different places and from many different sources such as those referenced in the Documents section of this Report as well as from regulatory agencies, banks and loan servicers, the credit reporting industry and trade associations." *Id*. "With respect to credit industry standards, throughout this Report, I have cited, as part of the basis for my opinions, various sources such as the CFPB; Flagstar's Code of Conduct and Business Ethics; National Consumer Law Center Manuals; Office of the Comptroller of the Currency, Risk Management Manual of Examination Policies and industry trade groups." *Id*. at 9. When Tarter explicitly states exactly what regulatory standards he relies on, on what basis does Defendant argue against it? *See also* Tarter Report, p. 15 ("It is my opinion that [the CFPB's] guidance has become the industry standard for all forbearances and it prohibits that type of delinquent payment reporting that occurred here."). It is clear that Mr. Tarter both explains his reasoning and cites to the appropriate guidance for his opinion on the industry standard. Defendant's argument is the only thing lacking a basis.

Defendant cites to *Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003) with the parenthetical citation that suggests that an expert has to cite to professional literature. But that quotation is *nowhere to be found* in the case. An imaginary citation by Defendant. Defendant's citation to *Youngman* fares no better, as an expert in the credit industry does not do scientific research that requires empirical research. *See Youngman v. Robert Bosch LLC*, 2014 U.S. Dist. LEXIS 204528 (E.D.N.Y. June 16, 2014); *contra Ma v. Equifax Info. Servs., LLC*, 288 F. Supp.

4

3d 1360, 1366 (N.D. Ga. 2017) ("Mr. Hendricks has a wealth of experience regarding credit reporting agency practices, and an expert may be qualified on the basis of experience.").

Defendant next argues that Tarter ignores statutory and decisional authority that undermine and contradict his conclusion. But Defendant fails to cite to these supposed authorities that Tarter ignored. As explained by Plaintiff, the statutory language supports Tarter's conclusions, which is also supported by citations to regulatory authorities. There is no rational argument that Mr. Tarter's opinion is not fully supported. Tarter Report, p. 15 (citing to the CFPB: "furnishers can grant accommodations voluntarily or pursuant to a statutory or regulatory requirement . . . . the furnisher must continue to report the credit obligation or account as current.").

In short, Mr. Tarter's opinions are based on his own observations of the evidence, the regulations, and his experience. If Defendant takes issue with the evidence or his opinions, that goes to the weight of his report, not admissibility. Defendant should save its arguments for cross-examination. *See Ma*, 288 F. Supp. 3d at 1366 ("Defendant's objections go more towards the weight of [the expert]'s testimony than to its admissibility."); *McDonough v. JPMorgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 12755, at *4 (E.D. Mo. Sept. 16, 2016) (*citing Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100-01 (8th Cir. 2006) ("gaps in expert witness's qualifications or knowledge generally go to weight of witness's testimony, not its admissibility.")).

The opinion also is not a legal opinion. The issue of legal opinions and conclusions has been addressed by the *Ma* court. While stating that the general principle is that testifying experts cannot give legal opinions, the court narrowed the issue; "all witnesses are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." *Ma*, 288 F. Supp. 3d at 1367 (citing *Dahlgren v. Muldrow*, 2008 U.S. Dist. LEXIS 4103 (N.D. Fla. Jan. 18, 2008) (internal quotations omitted)). *Ma* found

5

that "Here, [the expert] seeks to testify that Defendant did not have adequate procedures to ensure accuracy, and that Defendant was reckless in not taking steps to prevent mixing after Plaintiff gave notice of inaccuracies. Such testimony seeks to resolve a factual dispute, but does not go so far as to say that Defendant violated the FCRA. In this case, both issues of accuracy and reasonableness of the investigation are potentially factual issues to be determined by a trier of fact. *See Coulter v. Chase Bank USA, N.A.*, 2020 U.S. Dist. LEXIS 179895, at *13 (E.D. Pa. Sept. 30, 2020) (*quoting Seamans v. Temple Univ.*, 744 F.3d 853, 864-65 (3d Cir. 2014) ("whether an investigation is reasonable is ordinarily a question for the jury," also finding a dispute of material fact as to whether defendant furnished inaccurate information)). Therefore, Mr. Tarter's opinions are permissible.

Third, Defendant briefly argues that Tarter lacks specialized expertise in "Pandemic-Era Mortgage Servicing." But Mr. Tarter's general experience in credit reporting covers all credit reporting and he specifically bases his opinion on industry guidance and statutory language that only appears during the pandemic era. Numerous courts have found that Mr. Tarter's experience qualifies him to opine on the industry. *See Downs v. River City Group, LLC*, 2015 U.S. Dist. LEXIS 18217, at *19-20 (D. Nev. Feb. 13, 2015) (examining Tarter's qualifications and experience including, *inter alia*, "Tarter has worked for banks and financial institutions for more than forty years, has been involved in lending disputes, and has conducted audits 'pertaining to suspicious circumstances involving consumer credit disputes, dispute resolution, loan commitments, underwriting and due diligence, loan servicing, mortgage broker relationships, bank and financial service industry practices.'"); *Ellis v. Pa. Higher Educ. Assistance Agency*, 2008 U.S. Dist. LEXIS 112150, at *15 (C.D. Cal. Oct. 3, 2008) ("the Court finds that Tarter is qualified as an expert in the field of credit scoring and credit stigma."). There is no basis for excluding Mr.

6

Tarter on these speculative grounds and if anything, Defendant's argument again goes to the weight of his opinion.

Finally, Defendant argues that Tarter's opinions on damages lack foundation. But Tarter has the expertise to examine the credit impact of Defendant's reporting. *See Ellis v. Pa. Higher Educ. Assistance Agency*, 2008 U.S. Dist. LEXIS 112150, at *15 (C.D.Cal. Oct. 3, 2008) (approving expert with familiarity in FICO scoring model and experience dealing with lending); *see also Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 1222, 1234-35 (C.D.Cal. 2007) (same). Further, Tarter's testimony directly examines the three reason codes within credit denial letter, which means he "connect[s] the actual evidence to his conclusions." Again, any argument against the evidence goes to the weight of the opinion. Defendant's reference to the *quantifying* of Plaintiff's economic damages is irrelevant, as Tarter does not express an opinion on the amount of damages suffered.

In sum, Defendant's many (unfounded) complaints can, and should, be saved from cross-examination. The Court can consider his opinion in making its decision on summary judgment.

2. The Weiss Declaration is Admissible

Defendant's argument, as stated, against the Weiss declaration is that it "asserts new facts for the first time while contradicting the [] denial letter." This is not a valid basis to exclude a declaration. Defendant attempts three arguments, none of which have merit. First, it attempts to state that the declaration should be excluded on the basis of the "sham issue of fact" doctrine. Def. Motion, p. 9-10 (*citing Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001)). But the affidavit does not contradict Mr. Weiss' prior testimony. Second, Defendant attempts to use the best evidence rule, which requires the production of an original writing. But the denial letter *has* been produced, so this also in unsuccessful. Third, Defendant relies on hearsay. But Plaintiff has already argued

that "[h]earsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 215 (S.D.N.Y. 2007).

### i. *The Declaration is not a Sham Affidavit*

Defendant claims that the declaration "flatly contradicts the Ark Mortgage denial letter issued by Mr. Weiss himself." But it doesn't. The Weiss declaration is based on his personal knowledge in the loan application for Plaintiff. It was Mr. Weiss who pulled Plaintiff's credit and who determined whether she was eligible for a mortgage by meeting certain underwriting guidelines. Ex. J, ¶ 4. According to Mr. Weiss, the delinquencies made Plaintiff ineligible for a Fannie Mae mortgage under the guidelines. *Id.*, ¶ 6. In his professional view and according to his own recollection, this was a major factor in the determination. *Id.*, ¶ 8. None of this contradicts the denial letter, which lists "serious delinquency" as a key factor. Defendant ignores this statement with blinders, only stating that an "insufficient credit score" and "number of recent inquiries" are the key factors. But Defendant cannot ignore key statements in the denial letter. If anything, Mr. Weiss is expounding on the denial letter, and the letter supports his assertion that the "serious delinquency" was – in fact – the Flagstar delinquencies within the 12 months of the credit report. Notably, Defendant's complaint that the denial letter does not specifically mention the Flagstar account actually does contradict the evidence in the denial letter. Because although there is no name, the "serious delinquency" reason *must* refer to one individual tradeline. All Mr. Weiss does is identify the tradeline that was omitted and fills in the gaps. Further, Mr. Weiss also states that Flagstar was a "major" factor, not the sole factor, and thus, Defendant's complaints about other factors being ignored are irrelevant. Therefore, the declaration does not contradict any evidence, nor can it be considered a sham affidavit as Mr. Weiss never gave prior testimony (contradictory

8

or not).¹ *Cf. Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). Because Weiss was never subjected to a deposition, the doctrine is inapplicable. Other witness statements may be excluded by the doctrine, but only where the testimony contains contradictions that are "unequivocal and inescapable," and "unexplained." *See In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013). As explained above, that is not the case here.

Even if it did obliquely contradict the denial letter, contradictory evidence is not a basis for excluding testimony. If anything, it would create a question of fact. *See Palazzo v. Corio*, 232 F.3d 38, 44 (2d Cir. 2000) ("to the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility."). Next, Defendant argues that the declaration offers no probative evidence to support its opinion. But the declaration is *not* an expert opinion and does not require evidence. The declaration contains statements of fact by a fact witness based on Weiss' own personal knowledge. Therefore, the declaration cannot be excluded by Defendant's under-supported "sham" issue of fact argument.

### ii. The Best-Evidence Rule is Not Applicable

Defendant invokes the best-evidence rule, which states that the production of the document is needed to prove the contents. But, as argued above, the Weiss declaration is not attempting to prove the contents of the denial letter or contradict it. *See Kiva Kitchen & Bath, Inc. v. Capital Distrib. Inc.*, 319 Fed. Appx. 316, 323 (5th Cir. 2009) ("Thus, the best evidence rule 'comes into

---

¹ Defendant's complaint about the "eleventh-hour" facts are also of no moment. Mr. Weiss was always properly identified as a witness and declarations from witnesses are often submitted at summary judgment. It was only Defendant's lack of diligence that denied it the opportunity of learning of these facts.

play only when the terms of a writing are being established,' not when a witness's testimony is based on personal knowledge."); *see also* WEINSTEIN'S FEDERAL EVIDENCE § 1002.04 (stating that the best evidence rule is not applicable when a "witness's testimony is based on first-hand knowledge of an event, as opposed to knowledge gained from a writing, recording, or photograph depicting the event."); *contra New York v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 328 (S.D.N.Y. 2000) (disregarding statements as to the contents of letters). The declaration supports, corroborates, and expands on the denial letter with additional facts only known to Mr. Weiss. Accordingly, the best evidence rule does not come into play when Mr. Weiss is testifying regarding his first-hand knowledge of the denial.

### *iii.     The Declaration is not inadmissible hearsay or opinion evidence*

As stated above, the declaration contains assertions that are within the personal knowledge of Mr. Weiss. As the mortgage broker, he has first-hand knowledge of the denial of the application, and he has first-hand knowledge of *why* he denied the application. He also has personal knowledge of the credit-report and the underwriting guidelines. *See FDIC v. Arcadia Marine, Inc.*, 642 F. Supp. 1157, 1160 (S.D.N.Y. 1986) ("An affidavit sworn to by a party opposing summary judgment and containing statements based on personal knowledge deserves to be generously construed."). It is not his opinion on why Plaintiff was denied because he was there in the room. He's not speculating, but offering the facts. Therefore, Mr. Weiss' declaration is admissible on summary judgment.

3. <u>Plaintiff's Assertions in the Statement of Facts are Supported by the Expert Report and Weiss Declaration</u>

Finally, Defendant argues that all the statements in the Statement of Facts that rely on the Expert Report and the Weiss declaration should also be disregarded. But because, as argued, these

documents are admissible, the statements are properly supported and Defendant does not have the evidence to dispute the facts asserted.

### B. Defendant's Arguments as to Inaccuracy Fail

Plaintiff has substantially addressed the inaccuracy of the reporting in both her primary motion for summary judgment and her opposition to Defendant's motion for summary judgment. Essentially, Plaintiff's argument is that Defendant is misreading the law because it is undisputed that a forbearance was entered into in May 2021, and that any accommodation made required Defendant to report the account as current either under the Cares Act, or via notation of the status of the loan for complete and accurate reporting. This is also consistent with Defendant's letter to Plaintiff that there would not be any credit impact. Exhibit P.

To the extent Defendant argues that the forbearance only began when the hardship letter was submitted, there are two problems. First, it ignores that Cares Act does not require a hardship letter, only an accommodation. Defendant granted an accommodation in May regardless of when it received the letter. Indeed, Defendant itself states that the letter is immaterial. Second, by failing to report the existence of such an agreement, at any time, Defendant's reporting was clearly incomplete.

Defendant does present a new argument. Defendant argues Plaintiff's loan was "already delinquent as of May 1, 2021, her first mortgage payment due date, before she even requested forbearance on May 15, 2021." Def. Motion, p. 15. This is another serious misunderstanding of the law and credit reporting standards or an attempt to mislead the court. Plaintiff <u>would not be delinquent on her account until she is 30 days past the May 1, 2021 due date</u>. The lowest level of

delinquency that a furnisher can report is 30 days past due. *See* Ex. 11-13.[2] Yet at the time of the forbearance request, she was not yet 30 days past due. *Cf. Tomes v. LoanCare, LLC*, 2023 U.S. Dist. LEXIS 103735, at *8 (D. Kan. June 14, 2023) ("Plaintiff was 150 days delinquent on her mortgage before she entered the forbearance in April 2020."); *see also* 15 U.S.C. § 1681s-2(F)(ii)(II) ("if the credit obligation or account was delinquent before the accommodation . . . maintain the delinquent status during the period"). The guidance from the CFPB provides a relevant example, stating that a furnisher "cannot advance the delinquent status." Ex. E, Tarter Report, p. 15. For instance, "if at the time of the accommodation the furnisher was reporting the consumer as 30 days past due, during the accommodation the furnisher may not report the account as 60 days past due." *Id*. Thus, even if Plaintiff *were* 15 days past due, Defendant could not advance the delinquency to 30 days past due, which is what it did the *following* month in June.

Finally, Defendant argues that the Plaintiff misstates the "materially misleading" standard and that the omission of the mention of the forbearance does not materially mislead a creditor. First, Defendant is quibbling over language that does not matter. There is no practical difference between "could adversely impact credit decisions" and "can be expected to impact credit decisions." *See Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 812 (7th Cir. 2023) (*citing Frazier v. Dovenmuehle Mortgage, Inc.*, 72 F.4th 769, 776 (7th Cir. 2023) ("By materially misleading, we mean 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'")). Secondly, while Defendant argues that Plaintiff has not offered any legal basis to support the argument that the omission was materially misleading, Plaintiff's opposition to summary judgment addresses numerous circuit cases that found the

---

[2] These ACDV responses show that even Defendant reported Plaintiff as current in May, and only started reporting her as delinquent in June (30 days past due), followed by accelerated delinquency in July (60 days) and August (90 days).

12

omission of a mention of an agreement regarding missed payments is materially misleading. *Chaitoff* 79 F.4th at 813-14 (*citing Pittman v. Experian Info. Sols.*, 901 F.3d 619, 639 (6th Cir. 2018) (not reporting the payment plan "implies a much greater degree of financial irresponsibility.") and *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1318-19 (11th Cir. 2018) (no inaccuracy when furnisher *did* add a statement about the payment plan)).[3]

Defendant argues that the omission of a forbearance does not "contradict or undermine the essential truth" or paint a substantially inaccurate picture of creditworthiness; the above case law prove otherwise. *Chaitoff* examines the difference between two debtors, one with a plan and one without. "Because a TPP [or forbearance] gives potential furnishers more accurate information on a consumer's creditworthiness," the omission of such information is misleading. 79 F.4th at 814. Likewise, the creditworthiness of Plaintiff should reflect the responsibility she took to obtain a forbearance.

### C. Defendant's Investigations were Unreasonable Under § 1681i

The reasons Defendant's investigation was unreasonable is extensively covered in prior briefs by Plaintiff. Rather than repeat them here, Plaintiff references these arguments by incorporation. However, Plaintiff will address one point raised by Defendant. Defendant suggests that Plaintiff must point to a specific deficiency in the investigative procedures. Def. Motion, p. 23. This is not required. *See Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 845 (6th Cir. 2004) ("Generally, a plaintiff need not point to specific deficiencies in an agency's practices or procedures.") (*quoting Morris v. Credit Bureau of Cincinnati*, 563 F. Supp. 962, 967 (S.D. Ohio 1983) ("it is not plaintiff's burden to suggest ways in which defendant might improve its

---

[3] To the extent Defendant claims that Plaintiff would have to prove that a mention of the forbearance would have saved the loan application, that is not the standard. Plaintiff must only prove an expectation, and it would be impossible for any plaintiff to prove hypothetical situations like that.

13

operation."). Even so, Defendant's policies are so deficient that it does not even have the ability to report the forbearance if it wanted to. Cleary Dep. (Ex. D), p. 36:18-21. Without the ability to more accurately report information, the procedures for reasonably investigating a dispute of missing information is inherently unreasonable.

### D. Actual Damages and Causation

Both parties have also extensively briefed this issue before. Plaintiff incorporates her prior arguments, especially the section found in Plaintiff's opposition to Defendant's motion for summary judgment. Further, as argued above, the Weiss declaration can be used on summary judgment. Defendant claims that the declaration is insufficient because there is no documentary support. But even if the denial letter did not support everything stated in the declaration, the declaration alone is sufficient. The declaration does not need documentary support given that it is based on personal knowledge and the testimony alone can support a finding of summary judgment, absent any contrary evidence. Defendant has presented no admissible contrary evidence.

### E. Willfulness

Once again, there are few new points in Defendant's willfulness argument that has not already been addressed by Plaintiff's opposition. Defendant does attempt to distinguish *Pittman*. 901 F.3d at 637-39. Defendant states that, "by contrast, there was no written forbearance agreement binding on Flagstar at the time of the June-August 2021 report." Def. Motion, p. 26. But there was a forbearance agreement in place, as admitted by Defendant itself. Thus, the requirement of a written agreement makes no difference and is found nowhere in the case law. Defendant also argues that the forbearance does not eliminate the borrower's pre-existing duty to make contractual payments. But the TPP *also* does not eliminate the legal duty to pay. *See Chaitoff*, 79 F.4th at 811 ("Although Chaitoff may have sent Ocwen payments in each of May, June, and July 2017, those

14

payments were applied to earlier delinquent months in accordance with the TPP's terms. Experian's reporting of those three months as delinquent was accurate"). There is no substantial difference between the omission of a TPP and the omission of a forbearance.

### III. CONCLUSION

For the reasons above, and for the reasons explained in Plaintiff's motion for summary judgment, Defendant has not and cannot meet its burden on summary judgment. Its motion must be denied.

Dated: November 18, 2024.                   Respectfully submitted,

/s/ Daniel Zemel
Daniel Zemel, Esq.
**Zemel Law, LLC**
400 Sylvan Ave., Suite 200
Englewood Cliffs, New Jersey 07632
T: 862-227-3106
E: dz@zemellawllc.com
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on this 18th day of November, 2024 via the Court's ECF System.

/s/ Daniel Zemel
Daniel Zemel, Esq.
