# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

No. 23-CV-0239 (RER) (LKE)

————————————————

FAIGY OESTREICHER

VERSUS

FLAGSTAR BANK AND EXPERIAN INFORMATION SOLUTIONS, INC.

————————————————

**MEMORANDUM & ORDER**

————————————————

**RAMÓN E. REYES, JR., District Judge:**

On September 29, 2025, this Court granted in part and denied in part plaintiff Faigy Oestreicher's ("Oestreicher") and defendant Flagstar Bank's ("Flagstar") cross-motions for summary judgment. (ECF No. 118 (the "Order")). The Court further ordered that this case will proceed to trial on Oestreicher's section 1681o negligence claim. (*Id.*) The parties now cross move for reconsideration of the Order. (ECF Nos. 119, 120). After reviewing the parties' submissions and the Order, the Court finds that the parties fail to identify any controlling law or factual matters that were overlooked and therefore no basis exists to reconsider the Order. Accordingly, the parties' cross-motions for reconsideration are denied.[1]

---

[1] The Court acknowledges and offers its gratitude to Yueyang "Lilian" Gao, a judicial intern and soon to be graduate of Columbia Law School, for her assistance in researching and drafting this memorandum and order.

## LEGAL STANDARD

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *United States v. Zhu*, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (citation omitted). Whether under Local Rule 6.3, Rule 54(b), or Rule 59, the standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).[2] Reconsideration may not be used as a vehicle for relitigating issues already decided, securing a rehearing on the merits, or taking a second bite at the apple. *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022); *Ferreira v. Stern*, No. 22-CV-2182 (JMA), 2023 WL 2787631, at *4 (E.D.N.Y. Apr. 4, 2023). Whether to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013).

---

[2] Oestreicher's motion to reconsider is brought pursuant to Local Rule 6.3 and Rule 59 of the Federal Rules of Civil Procedure. (ECF No. 119 at 1). Flagstar's motion to reconsider is brought pursuant to Local Rule 6.3 and Rule 54 of the Federal Rules of Civil Procedure. (ECF No. 120 at 1). The standard for resolving a motion for reconsideration pursuant to Local Civil Rule 6.3, Rule 54(b), or Rule 59(e) is the same. *Kane v. New York State Unified Ct. Sys.*, No. 25-CV-3595 (RER) (MMH), 2025 WL 2645577, at *1 (E.D.N.Y. Sept. 15, 2025) ("The standards governing motions for reconsideration are the same under Local Civil Rule 6.3 and Rules 59(e) and 60(b)"); *Su v. Alerus Fin., N.A.*, No. 1:23-CV-00537-DCN, 2025 WL 2712129, at *1 (D. Idaho Sept. 23, 2025) ("The standard for reconsideration under 54(b) is substantially the same as that used for motions to reconsider under Rule 59(e)").

## **DISCUSSION**

I.      The Court Properly Granted Summary Judgment on Plaintiff's Willfulness Claim

Oestreicher argues that the Court erred in granting Flagstar summary judgment regarding her claim of willful noncompliance under 15 U.S.C. § 1681. (ECF No. 119-1 at 2–5). She contends that the Court overlooked evidence in the record that Flagstar had a policy or practice of reporting accounts in forbearance as delinquent without reporting the forbearance itself, and that the Court further erred by treating the absence of such a policy as proof of willfulness. (*Id.*) She also argues that the Court misapplied *Burns v. Bank of Am.*, 655 F. Supp. 2d 240 (S.D.N.Y. 2008), *aff'd*, 360 F. App'x 255 (2d Cir. 2010) and that this case more closely resembles *Gorman v. Experian Info. Sols., Inc.*, No. 07 Civ. 1846 (RPP), 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008). The Court is not convinced.

As explained in the Order, the Court analyzed willfulness while viewing the record in the light most favorable to Oestreicher. (ECF No. 118 at 20–22). In doing so, the Court made these assumptions: Oestreicher entered forbearance in May 2021, Flagstar's records showed that status, omitting that status rendered the reporting misleading, and it was common practice in the industry to report the account as current with a forbearance code instead of delinquent. (*Id.* at 21). Even under those assumptions, the Court still found that the record did not support a finding of knowing or reckless noncompliance under section 1681. (*Id.* at 21–22). The plaintiff's motion does not identify any facts that were missed that alter that conclusion.

The Court did not hold that proof of a formal policy or practice is required to establish willfulness under the FCRA. The Order noted that there was no proof that

3

Flagstar maintained a policy completely rejecting materially different information. This distinguished this case from *Gorman*. (*Id.* at 21). The Court, however, did not imply that the absence of such a policy was determinative on its own. Rather, the Court considered the record as a whole and concluded that Flagstar's conduct in reviewing its payment history, correspondence, loan file, and forbearance records before answering the ACDVs was, at most, negligent, not the sort of "conscious disregard or deliberate and purposeful actions" necessary to establish willfulness under the FCRA. *See Burns*, 655 F. Supp. 2d at 252. The Court likewise did not misapply *Burns* or overlook *Gorman*. In *Gorman*, the court found evidence of recklessness where "Experian did not use this information to update its credit report due to an Experian policy not to consider information received within thirty days of a direct response from the furnisher," and where there were "material differences between the information Experian received" shortly thereafter. *Gorman,* 2008 WL 4934047, at *8. Here, by contrast, the Order found that Flagstar reviewed the documents relevant to the dispute, including its payment history, correspondence, and forbearance records. (ECF No. 118 at 21). Oestreicher may dispute the adequacy of that review or the conclusion Flagstar reached based on those materials, but those arguments are based on reasonableness and negligence, not willfulness. For the reasons already stated in the Order, reconsideration is denied.

II.        Flagstar's Motion

Flagstar argues that the Court committed clear error in holding that its reporting was inaccurate under the FCRA and in declining to grant summary judgment on reasonableness, causation, and actual damages. (ECF No. 120-1 at 4–16). Its main

4

argument is that the Court misapplied Second Circuit precedent, especially *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264 (2d Cir. 2023), *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42–44 (2d Cir. 2023), and *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021), when it found that Flagstar's reporting could be materially misleading. (*Id.* at 4–12). The Court disagrees.

A.  Inaccuracy and Materially Misleading Reporting

As explained, the Court did not depart from *Mader*, *Sessa*, or *Shimon*. (ECF No. 118 at 14–18). Instead, the Court applied those decisions in the order they needed to be used. First, the Court considered whether the disputed information was "objectively and readily verifiable." (*Id.* at 14–15). It concluded that it was, because the dispute did not turn on an "unresolved legal question," but on whether Flagstar reported Plaintiff as delinquent while its own records reflected that her loan had been placed into an active forbearance beginning in May 2021. (*Id.*) The Court then separately considered whether the reporting was "patently incorrect or . . . misleading." (*Id.* at 15–18). Based on this record, it concluded that a reasonable jury could find the latter. (*Id.* at 17–18).

Flagstar's motion does not point to any overlooked authority that would lead to a different outcome. Instead, it reargues that reporting June, July, and August 2021 as delinquent could not be inaccurate as a matter of law because monthly payments were in fact not made during these months. But *Shimon* does not reduce FCRA accuracy to technical correctness alone. It states that a report is inaccurate not only when it is "patently incorrect" but also when it is "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Shimon*, 994 F.3d at 91. The Order

5

applied that standard. (ECF No. 118 at 15–18). Flagstar's motion simply disagrees with how the Court applied it to these facts.

Nor does *Mader* compel reconsideration. In *Mader*, the Second Circuit ruled that the alleged inaccuracy there was not actionable because it turned on an "unresolved legal question" and thus was not "objectively and readily verifiable." *Mader*, 56 F.4th at 269–70. This case is different for the reasons already stated in the Order. (ECF No. 118 at 14–15). Whether Flagstar's own servicing records reflected an active forbearance during the months it reported delinquency is a factual question that can be checked against Flagstar's records; it does not require a CRA or a court to settle a new legal dispute of the kind at issue in *Mader*.

*Sessa* reinforces, rather than undermines, the Court's analysis. The Second Circuit rejected a "bright-line rule" limiting FCRA claims to "purely factual or transcription errors" and held that the proper question is whether the disputed information is "objectively and readily verifiable." *Sessa*, 74 F.4th at 43–44. That is what the Order did. (ECF No. 118 at 14–15). After that threshold was met, the Court properly considered whether the reporting, even though it was based on missed payments, left out important information that would have made it clear that it was misleading. (*Id*. at 15–18).

That conclusion is consistent with the Second Circuit cases discussed in the Order and with persuasive authority addressing materially misleading reporting in closely related situations. In *Lewis v. Wells Fargo Bank, N.A.*, No. 22-CV-2851, 2023 WL 2599954, at *4–5 (E.D.N.Y. Mar. 22, 2023), the court rejected a motion to dismiss because the plaintiff alleged that a lender kept reporting a late payment from October 2019 even though there

6

was a retroactive forbearance covering the same period. The court held that, even if the reporting was "technically true," it could still be materially misleading because, "in light of the retroactivity of the [forbearance], the [b]ank's reported information tells only part of the story." *Id*. at *4. That reasoning applies here. The Order also did not hold that every delinquency reported during a forbearance is necessarily inaccurate. Instead, it concluded that a reasonable jury could find Flagstar's reporting materially misleading because it reported Plaintiff as delinquent while it did not state that Flagstar's own records showed that the Plaintiff was in forbearance. (ECF No. 118 at 17–18).

The same principle can be found in *Sherman v. Sheffield Fin., LLC*, 627 F. Supp. 3d 1000, 1010–16 (D. Minn. 2022). The court ruled that furnishers "have a duty to avoid omitting material information that renders the report incomplete or inaccurate," because "even if the information is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." *Id*. at 1010–16. Although *Sherman* involved the failure to report a bona fide dispute rather than a forbearance, its reasoning is relevant here: a furnisher may not rely on technical accuracy alone where omitted information materially alters how a creditor would understand the debt. *Id*. at 1011–16. The Order adopted that theory. (ECF No. 118 at 15–18).

By contrast, *Borowski v. Ally Fin. Inc.*, No. 22-CV-0394, 2023 WL 4207784, at *2–4 (E.D. Wis. June 27, 2023), does not aid Flagstar. In *Borowski*, the court held that "a forbearance is not incompatible with a 'charge off,'" and concluded that the plaintiff had not plausibly alleged inaccurate delinquency reporting because his "date of first delinquency was January 20, 2020," while he did not seek a COVID-related forbearance

until after the pandemic shutdowns began in March 2020. The furnisher also fixed balance errors when they were properly notified. *Id*. at *2–4. In this case, however, the Order construed the record in favor of the Plaintiff and found evidence that a jury could conclude that the forbearance was approved effective May 2021 and that the challenged June to August 2021 reporting overlapped that period. (ECF No. 118 at 17–18). Based on those facts, *Borowski* is distinguishable, not controlling.

Flagstar's argument that the Court improperly relied on borrower-facing portal evidence also fails. The Court did not use Plaintiff's subjective understanding as the legal standard. It relied on the portal, correspondence, and servicing evidence as proof of what Flagstar itself reflected internally about the account's status. (*Id.*) The Court did not adopt a general rule that furnishers must always report a forbearance code when an account enters forbearance. The Order clearly stated that the Plaintiff's loan was private and outside the CARES Act reporting regime. (*Id*. at 16–17). Even with that assumption, the Court found only that, based on this record, omitting any reference to the active forbearance while reporting delinquencies could be seen as materially misleading. (*Id.* at 17–18).

Flagstar's reference to cases such as *Giovanni v. Bank of Am., N.A.*, No. C 12-02530, 2013 WL 1663335 (N.D. Cal. Apr. 17, 2013), does not warrant a different outcome. The court there said that a later bankruptcy discharge "does not change the underlying fact that, during the pendency of the bankruptcy, the account was delinquent," and that "it is accurate to report, after discharge, that a debtor was delinquent during the pendency of bankruptcy because at that time the debt existed." But *Giovanni* also recognized that,

8

"[t]o avoid presenting a misleading picture, the creditor must also report that the account was discharged through the bankruptcy and the outstanding balance on that account is zero." *Id.* at *5–8. That bankruptcy context does not undermine the narrower conclusion reached here: that a furnisher's omission of account status reflected in its own records may render otherwise facially accurate reporting materially misleading under the FCRA. *See Shimon*, 994 F.3d at 91.

In sum, Flagstar has not shown that the Court overlooked controlling law or facts in concluding that a reasonable jury could find its reporting materially misleading. Reconsideration is therefore denied.

## B. Reasonableness

Flagstar next argues that the Court should have granted summary judgment on the reasonableness of its investigation based on Plaintiff's Local Rule 56.1 responses and the steps Flagstar says it took to review the ACDVs. (ECF No. 120-1 at 12–14). The Court has already considered those points. (ECF No. 118 at 18–20). The Order recognized that Flagstar reviewed the CRAs' dispute information, payment history, correspondence, attachments, and forbearance records. (*Id.* at 19). The issue, however, was not whether Flagstar did nothing; it was whether, viewing the record in Plaintiff's favor, its investigation was reasonable given the fact that its own records supposedly reflected an active forbearance while it continued to check delinquency reporting. (*Id.* at 19–20). Since that question is still based on facts in this case, reconsideration is unwarranted.

9

C. <u>Causation and Actual Damages</u>

Flagstar also restates its argument that the Plaintiff cannot prove causation or actual damages because other parts of her credit profile, like more negative information, high indebtedness, and other inquiries, could have led to any negative credit decision. (ECF No. 120-1 at 14–16). The Court did not overlook that point. The Order clearly stated that there were other negative factors in the Plaintiff's credit profile that could support Flagstar's case at trial. (ECF No. 118 at 22–23). The Order also identified other evidence that could lead a reasonable jury to believe that the Flagstar reporting was a major cause of the Plaintiff's alleged injury, such as the Weiss Declaration and the Ark Mortgage denial evidence. (*Id.* at 22). On reconsideration, Flagstar asks the Court to weigh that evidence again. That is not the Court's function on a motion to reconsider.

## **CONCLUSION**

Neither Plaintiff nor Flagstar has demonstrated that the Court overlooked controlling law or factual matters warranting reconsideration. The parties' motions for reconsideration are therefore denied.

SO ORDERED.


 /s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: May 21, 2026
        Brooklyn, New York